## Case No. 15,886.

### UNITED STATES v. NINE TRUNKS.

[6 Wkly. Notes Cas. 542; 24 Int. Rev. Rec. 327; 6 Reporter, 613; 26 Pittsb. Leg. J. 38.] [1]

Circuit Court, D. New Jersey.    Sept., 1878.

CUSTOMS DUTIES—VIOLATION OF LAWS—INFORMATION OF FORFEITURE—EVIDENCE—BURDEN OF PROOF.

[1. In a proceeding to forfeit imported goods on the ground of fraud, the goods themselves are regarded as the defendant and offender, and therefore it is no objection to the admission of proof of communications made to the revenue officers that they were made in the absence of the claimant.]

[2. Where goods have been seized for illegal importation, it is competent to prove that the fact of an intended illegal importation was previously known to the revenue officers, and that they acted thereon in making the seizure. Such information may properly be regarded as so connected with the illegal act itself as to constitute part of the res gestæ. U. S. v. 661 Bales of Tobacco, Case No. 16,297, approved.]

[3. In a suit to forfeit goods, after the passage of the act of June 22, 1874, which requires proof of an actual intent to defraud the government, there is no error in charging the jury that, after an actual importation in violation of law has been shown, if the claimant knew that his method of importation was contrary to law, the burden is upon him to show affirmatively that he did not adopt such method with intent to evade payment of duties.]

[In error to the district court of the United States for the district of New Jersey.]

An information was filed by the United States attorney against nine trunks and one bag, containing principally silks alleged to be subject to duty as imports, and which were imported into the United States on board the steamship Russia, and landed without the permit of the collector or naval officer of the port, and without payment of duty; whereby, under the fiftieth section of the act of congress of March 2, 1799 [1 Stat. 605], they became forfeited to the United States. The information alleged that the goods were landed without permit, with intent to evade the payment of duties, and prayed the appropriate process that the goods might be condemned and the proceeds

---

[1] [6 Reporter, 613, contains only a partial report.]

appropriated according to law. Subsequently B. G. Bean filed a petition of intervention, claiming the goods, and answered and pleaded to the information that the goods and merchandise therein mentioned did not become forfeited in manner and form as alleged.

A trial was had in the court below, and a verdict rendered for the claimant, under the ruling of the district judge that the act of congress of July 18, 1866 [14 Stat. 98], did not apply to goods of this character, but only to goods whose importation was wholly forbidden, and, that under the act of 1799, the landing of these goods, with passengers' baggage under a general permit, was not an unlading and delivery that subjected them to forfeiture. This judgment was subsequently reversed on error to this court, Mr. Justice Story holding that the goods were forfeitable, under the act of 1866, if they were shown to have been imported contrary to law, of which fact he said there was no doubt, under the evidence, and that under the proofs touching their transfer to the wharf from the vessel they were forfeitable under the act of 1799. He further decided that the act of June 22, 1874 [18 Stat. 186], passed during the trial, which provided that there should be no forfeiture of the goods unless the jury were satisfied that there was an actual intent to defraud the government, was applicable to the case; saying that the court was right in submitting to the jury to find whether such an intention existed, and that if it did, and the goods were imported contrary to law or unladen without a permit, the United States were entitled to a verdict, whether there was a collusion between the claimant and the customs officers or not. [Case No. 15,-885.]

On the second trial of the case the following facts appeared: Bean, the claimant, purchased in Europe the goods seized, and packed them in eight second-hand trunks, which he bought there, and in one other trunk of his own; that the trunks were entered on the manifest of the steamer Russia, by which he was a passenger, as his own personal baggage; that no certified invoice was obtained by him of the goods, and no declaration of the contents of the trunks was made by him. There was evidence that Bean was a dressmaker in New York, and intended to use the silks in his business. On the arrival of the steamer at her dock in the port of New York, these trunks were placed, according to the usual custom, with other passengers' luggage, on a portion of the dock set apart for the purpose of examination by the revenue officers, and that no baggage could be removed from this part of the dock without due examination and permission of the proper officers. It appeared that it was customary for the inspector after the examination of any particular trunk, and payment of duties, if any were found

to be due, to mark each trunk so examined with his initials, the number of his badge, and the word "Passed." After the trunks in question were upon the dock, one of the inspectors marked them in this manner, and the trunks were then moved up the dock by the workmen on the pier to the pile of "passed" baggage. This was done after Bean had left the vessel, and by the direction of one Brackett, a special agent of the treasury who was on the dock watching these trunks. Bean not appearing, Brackett made seizure of the trunks, and took them to the custom house. At this stage of the testimony Brackett was asked, as to an inquiry made by himself of one Gross, an employé of the steamship company having charge of their dock, Bean not being present at the time: "What did you ask Mr. Gross relative to these trunks of Bean, and what reply did Mr. Gross make?" Objected to as hearsay, and that a statement of a third party, not shown to be connected with Bean, in his absence, was incompetent and irrelevant. Objection overruled, evidence admitted, and exception. Answer: "I asked him if these trunks had been regularly passed, and he replied that they had been. I then ordered their seizure." Brackett, it appeared had gone to the steamer to look for Bean, in pursuance of information which had been given at the office of the special agent of the treasury. He was asked, on his examination, from whom he had obtained the information that these silks were to be brought on in the Russia, and what the information was. Objected to. Objection overruled, and exception taken.

The Court (Nixon, District Judge) charged the jury, inter alia, that (the law declared the goods to be forfeited, under the circumstances of this importation, if they were satisfied that the claimant intended, by what he did, to bring into the United States these goods and merchandise without the payment of the duties which the statute imposed; and that it was a question of fact for them to decide whether the claimant adopted this method of importation to secure that result, or that he did it for the purpose of saving time and freight, intending that the silks should be entered for the payment of duties after his arrival.) * * * (You must commence your inquiry with this proposition, that the importation of the goods was contrary to law. That much has been settled in the case on the previous trial. Then if you are of the opinion, from the facts shown, that Mr. Bean knew that his method of bringing in the merchandise was unlawful, the burden rests upon him, to satisfy you, by affirmative proof, that he did not adopt this method for the purpose of evading the payment of duties, but for some other and lawful purpose; as, for instance, to save freight, or to save time in the manner of transportation.) But if you are of the opinion that he

was not aware that such a mode of bringing in or unloading of the goods was contrary to law, then the government is obliged to establish by positive proof to your satisfaction that all the steps taken by him in the direction of their transportation were taken with a fraudulent intent, to wit, for the purpose of getting the merchandise into the country without the paying of duties.

Verdict for the United States, and judgment of condemnation and forfeiture was subsequently entered thereon. The claimant, Bean, thereupon sued out this writ of error, assigning for error, inter alia, the admission of the testimony excepted to as above, and the portions of the charge inclosed in parenthesis.

Stanley, Brown & Clarke, for plaintiff in error.

A. D. Keasby, contra.

McKENNAN, Circuit Judge. The court below permitted the United States to prove, by the officers who made the seizure, upon what previous information they acted and from whom that information was derived, and also by their informant, what he had told them, touching the proposed illegal importation of the goods. The conversations offered to be proved occurred in the absence of the claimant, and were objected to as hearsay, and it is now urged that the proof of them ought to have been excluded upon that ground. If the claimant were the subject against which the proceeding was directed and was, therefore, necessarily a party to it, there might be force in the objection, as the reason of the rule which excludes hearsay evidence might be invoked in his favor. But he was a voluntary intervener, the goods themselves being the defendant and offender, if there was any offence, and subject to the punitive consequences of a violation of the law committed by any person in reference to them. In U. S. v. 661 Bales of Tobacco [Case No. 16,297], Judge Blatchford said: "If any person does so and so, in regard to goods, they are forfeited. In all the statutes the merchandise is personated, the merchandise is called the offender; and if any person does in regard to that merchandise,—and, for the purposes of this case, I will limit it to any person lawfully connected with the merchandise,—if any person does the forbidden acts, the merchandise is forfeited. It is not like an indictment, in a criminal case, where personal guilt must be brought home to the individual, and where he is not responsible criminally for the acts of another; but in this case, and in all cases of this kind, the merchandise is responsible for the forbidden act of any person connected with it." So also, said Mr. Justice Strong, in his opinion in this case: "This is not a proceeding against the importers. It is against the goods imported. They are treated as guilty."

It is plain, therefore, that if the communications to the revenue officers, proposed to be proved, were relevant to the inquiry in hand, they were not objectionable because they were made in the absence of the claimant. There was evidence to show that the goods were imported, and were removed from the vessel in violation of law, and it was necessary to determine whether a violation of law was actually intended. Was it not then pertinent to show, that what was done in reference to the goods was in pursuance of a prearranged plan; that the fact of an intended illegal importation was known to the officers before hand? And if the subsequent mode of dealing with them by the person in whose control they were accorded with the information given to the officers, as to what was proposed to be done, may not the essential illegal intent be impressed upon the goods? If an illegal act is committed, may not information communicated to an officer, within the scope of his duty, of a purpose to commit it and of the manner of committing it, although not derived directly from the wrong doer, be considered to characterize the intent with which the act was committed? Indeed, I think, where a seizure has been made, and the question is whether it was warrantable, information of a purpose to do an act, touching the subject of it, which is verified by the commission of the act, may properly be regarded as so connected with the act itself, as to constitute part of the res gestæ, and is provable as such, in proceedings of this kind. Evidence of a kindred character was allowed in the case of U. S. v. 661 Bales of Tobacco, supra, the judge saying, "It was admissible under the decisions of the supreme court, not for the purpose of proving the body of the offence, but for the purpose of characterizing the intent with which a given act may have been done."

I do not understand the court below as having unqualifiedly instructed the jury that the burden of proof, as to fraudulent intent, was upon the claimant. The language of the judge was: "You must commence your inquiry with this proposition, that the importation of the goods was contrary to law. That much has been settled in the case in the previous trial. Then, if you are of the opinion, from the facts shown, that Mr. Bean knew that his method of bringing in the mercandise was unlawful, the burden rests upon him to satisfy you by affirmative proof, that he did not adopt this method for the purpose of evading the payment of duties, but for some other and lawful purpose, as, for instance, to save freight, or to save time in the matter of transportation. But, if you are of opinion, that he was not aware that such a mode of bringing in or unloading of the goods was contrary to law; then the government is obliged to establish by positive proof to your satisfaction, that all the steps taken by him, in the direction

of their transportation, were taken with a fraudulent intent, to wit, for the purpose of getting the merchandise into the country without the paying of duties." There is no error in this. Its obvious import is, that, if the claimant knew he was violating the law, an intent to evade the duties might fairly be imputed to him by the jury, and that hence it devolved upon him to present satisfactory counter proof that he was actuated by a lawful purpose In other words, that the presumption of fraudulent intent arising from wilful violation of the law, shifted upon the claimant the burden of proving the absence of such intent. This does not confound guilty knowledge with fraudulent intent, but correctly states, that an intent to evade the payment of duties and thus to defraud the government, may properly be inferred from an overt wilful violation of law, and that the duty of disproving this unfavorable inference devolved upon the claimant.

No special. notice of the other errors assigned seems to me to be necessary. It is sufficient to say, that I do not think they are sustained. The judgment is affirmed.