UNITED STATES v. FOX et al.

(District Court, E. D. Pennsylvania. January 13, 1893.)

No. 3.

1. CUSTOMS DUTIES—ENTRY AND APPRAISEMENT—RELIQUIDATION.

The general rule that upon the re-examination and reliquidation of duties the packages of goods must themselves be present, does not apply in the case of lenses for optical instruments, when there is no question as to their value, and it appears that a single specimen is a perfect representation of the whole importation.

2. SAME—IDENTITY OF SAMPLES.

In an action by the government to recover duties from the importer, which action is based on a reliquidation, the fact that the appraiser who made the re-examination cannot at the trial identify particular samples as belonging to particular invoices is immaterial when the goods consist of lenses for optical instruments, which are exactly alike in all the invoices, and the testimony further shows that at the time of making the re-

examination the appraiser had each sample marked as from the particular
invoice.

**3. SAME—RELIQUIDATION.**

The fact that duties paid under protest have been refunded upon a re-
classification will not prevent the government from recovering under a
second reliquidation, whereby the original duties were restored, if the suit
is brought before the expiration of one year from the entry of the goods.

**4. SAME—LIMITATION—RUNNING OF THE STATUTE.**

When duties paid under protest are refunded according to a second
classification, the office of the protest is then fulfilled, and it cannot there-
after operate to extend the period within which the government may
make a third reliquidation of the duties.

At Law. Action by the United States against Samuel L. Fox and
Edward B. Fox, trading as James W. Queen & Co., to recover customs
duties. Heard on motion for new trial. Motion granted.

From July to November, 1889, the defendants imported into the port of
Philadelphia certain small plates of glass of various shapes, with their faces
polished, but with their edges rough, these plates of glass being fitted for use
as lenses in optical instruments, when their edges should be cut to fit them to
the instruments. These goods were entered as manufactures of glass. They
were examined by the appraiser, who reported them to be manufactures of
glass of a certain value, and subject to a duty of 45 per cent. This duty was
duly paid, but in each case there was a protest by the importer, claiming that
the articles were glass disks, unwrought, for use in the manufacture of op-
tical instruments, and therefore within paragraph 708 of the free list. Pend-
ing these protests, on October 8, 1889, a suit brought by the present defend-
ants was tried in the United States circuit court at Philadelphia, which in-
volved, among other matters, a question of duty upon similar articles. The
charge of the court was to the effect that the articles were manufactures of
glass, and were dutiable as such. The case was not appealed, as the princi-
pal matters involved were articles of another description, as to which a similar
question was pending in another case in the supreme court of the United
States, and nothing further was done pending the decision of that question.
A short time prior to the trial of this case at Philadelphia, a case had been
tried in the circuit court at New York, which also involved the rate of duty
upon certain glass plates. At the trial in Philadelphia, it was claimed that
this decision in New York applied to the articles in suit at Philadelphia, but
the court distinguished the two cases, and refused so to rule.

On December 13, 1889, W. Reed Williams, who was also an importer
at Philadelphia of similar goods, and who had protests pending, applied to
the secretary of the treasury, claiming that the New York decision covered
the invoices at Philadelphia, and asking the secretary to investigate the mat-
ter, and to order a refund of the duties collected on said merchandise at Phila-
delphia. In pursuance of this request, the secretary of the treasury asked the
collector at Philadelphia for a report, and the matter was referred to the ap-
praiser at Philadelphia for a report upon all the entries of said merchandise.
He reported that all the goods were covered by the New York decision, and
upon his report refunds were ordered in all the cases. The present defend-
ants had nothing to do with the application of W. Reed Williams, or with the
investigation and order which followed. They, however, received under this
order the refunds made by the direction of the secretary of the treasury.
After the date of the report of the appraiser upon this question of refunds,
viz. from December 23, 1889, down to September 29, 1890, the defendants
made a number of importations of the same merchandise, which they entered
as glass disks, unwrought. These were duly examined by the appraiser, and
returned as glass disks, unwrought, free of duty, and a liquidation was made
by the collector accordingly.

In November, 1890, the collector, in the belief that a mistake had been made
in holding these goods to be within the decision of the New York case, re-
liquidated all the entries, including those in which the money had been re-
funded and those where the goods had been passed free of duty. In the for-

mer class of cases he restored the original duty; in the latter class of cases he liquidated a duty of 45 per cent., as manufactures of glass. In both cases, before liquidating, he sent the invoices and entries to the appraiser, who made a new return that the goods were manufactures of glass, dutiable at 45 per cent., and were valued at the amount stated in the invoices, and upon this return the collector based his liquidation. In the case of three of the entries in which the money had been refunded the last liquidation was made more than a year after the original entry. At the time of this last liquidation all the goods, including the examination packages, had been delivered to the importer, and had passed into consumption. The appraiser and collector, however, were in possession of samples of this kind of goods which they considered sufficient to enable them to judge of the goods, but which they could not identify as coming from the particular invoices or examination packages thereof. The testimony of the examiner on this point was as follows:

"By the Court: Question. Had you the lenses before you at that time? Answer. I had samples; a sufficient number of samples. By the District Attorney: Q. At the time that you had those invoices before you the second time, or at any time after the original appraisement, state whether or not you had before you a line of samples which was sufficient to enable you to correctly describe the character of the goods to the collector. A. I had. Q. What did you have before you? A. I had a sufficient line of samples. By the Court: Q. What had you? What quantity of these glasses had you? A. Quite a number. Many of them are present here. Q. Of this same invoice, not of some others? A. I had some of this invoice and some of others. Q. Were the original samples still in the office? A. Some of them were. Q. And you had those before you? A. Yes, sir. We have some of them there yet. By the District Attorney: Q. State what is the practice of your office with reference to taking samples of such importations as these at the time the invoice and examination packages are before you. A. We take a sufficient number of samples, so that in the event of any question arising we can refer to the samples. That is an every-day occurrence. Q. At the time you made the second report, you had those samples before you? A. I had. * * * By Mr. Prichard: Q. You had before you certain samples which came from various Queen invoices,—samples which, in your judgment, were quite sufficient to determine the value of the goods, and which ought to fairly represent them? A. Yes. Q. You did not have a sample there of this particular invoice in suit? A. No, sir; I cannot say that I had. Q. But you had various samples, which represented generally a line of goods throughout this invoice? A. I had sufficient quantity to answer my purposes. Q. Have you got those samples here which you can identify as being from any invoice in this case? A. I had some samples here, and I had them marked, each one wrapped in separate paper, and marked representing the number of entry or steamer, but those papers were taken off. Possibly it was not understood about them. They have become somewhat mixed up now. When I brought them here originally I had each one marked, so that I could apply it to each individual invoice. Q. Can you tell me, in these twenty-odd invoices, about how many samples you had which you identified as coming from the particular invoices in suit? A. They may not have been all from this importation, but they represent the goods. Q. I only want to understand how many samples, in point of fact, that you could identify as coming from these particular invoices. A. That I could not do. Q. Could you give us any idea? A. I could not do that. They are all of them of one character. To pick out one of these samples, and say it belonged to this identical invoice, I could not do. Q. You were able to do that once because you had them put up in papers? A. I was. I kept a memorandum of the numbers. I wrapped the samples up in papers, and put labels on them, by which I could identify them. Q. You did not, in point of fact, at the time of your second return, have the examination packages or the goods before you? A. Not the original goods. Q. I mean other than the samples? A. Not other than the samples. Q. Did you go to the store of the importer, and endeavor to find the goods? A. I did in some cases; probably not in this identical case. Q. I mean as to this particular invoice. I do not mean what your custom is. I mean at the time of the second liquidation in November, 1890. A. I do not remember whether it was necessary at that time to go to him for

samples. I think possibly we had a sufficient number. We had the identical samples at that time. I might say that some of the samples were sent to the department at Washington, some were sent to New York, and were sent to different places, and I think some were sent to the collector. They became scattered."

Against this final liquidation the defendants protested, not only upon the ground that the articles were glass disks, unwrought, and entitled to free entry, but also upon the ground that the return was made by the appraiser without any inspection of the goods, or of the portion thereof required by law. There was no evidence of fraud in the case, nor of any mistake, excepting the error of judgment, if it was an error, made by the appraiser, and which, so far as the evidence disclosed, was not occasioned by any action of the defendants; nor was there any evidence of concealment as to the character of the goods, it appearing that the mistake, if it was such, was made with full knowledge of the facts.

At the conclusion of the evidence a verdict was taken for the defendants under the following written stipulation:

"It is agreed that, in order that the questions of law may be discussed in the above case, a verdict shall be taken for the defendants, and a motion for a new trial made by plaintiff, and, if a new trial is ordered by the court, the case shall be submitted upon the stenographic report of the evidence already taken, without new evidence on either side, and a verdict rendered in accordance with the instructions of the court as to the law upon such evidence. It is further agreed that the reasons for a new trial shall include all objections and exceptions taken during the trial, as well as the points submitted by either side. Both parties reserve the right to take a writ of error of appeal from the decision of the court."

Ellery P. Ingham, for the United States.
Frank P. Prichard, for defendants.

BUTLER, District Judge. The annexed statement of facts, and of testimony respecting samples retained by the customs officers, furnished by the defendant, is substantially correct, and is adopted for the purposes of this motion.

The defendant's position, that the final liquidations, on which the suit is based, were made too late and are invalid, because the packages taken for inspection had then been returned to the importer, cannot be sustained, under the circumstances shown. There is no room for doubt respecting the general rule applicable to this subject. It is true that the government can only collect duties in the manner prescribed by statute. While the liability of the importer is personal, it is imperfect until the amount due is ascertained according to the methods thus provided; and no recovery can be had until this is done. There must be inspection of designated packages, to ascertain the value and description of the merchandise; and a liquidation made accordingly. Where the merchandise is subject to an ad valorem duty the appraisement is important, as it forms the basis of liquidation. Where it is subject to a specific duty, according to description and classification, it is not so material. In the former case the importer is entitled to a rehearing and appraisement before a special tribunal. In the latter he is not, as the appraisement does not affect him. While the statute provides for re-

examination and reliquidation, it is silent respecting the presence of package when this is done. It is well settled, however, that they must generally be present. The question has repeatedly been before the courts, and the ruling upon it has been uniform. The government itself has finally adopted this view, as is shown in the "Synopsis of Decisions" of the treasury department, No. 4,588, cited in the defendant's brief. Where the appraisement is the basis of liquidation, as where the duties are ad valorem, and the importer is entitled to an appeal, or where the merchandise is such that it may possibly not be uniform in character throughout the packages, or may be of a doubtful or uncertain description, as in the cases of wool, hair, and a variety of other articles, the presence of the packages cannot be dispensed with; and the courts therefore hold that the authority to re-examine and reclassify in such cases, carries the requirement that they shall be present. It is on this ground, and on this alone, that the general rule referred to rests. I do not think it is applicable to cases such as that before us, where the merchandise throughout the packages is necessarily uniform in character,— about the description of which there is no room whatever for question, and none is suggested, where therefore a single sample is as safe a guide as the entire package. Here the merchandise consisted of "lenses," a well-known manufacture of glass, being small plates formed into proper shape and prepared for use in spectacle cases. One of them is precisely like all others, except as to small and unimportant differences in size. The testimony fully warrants a conclusion that samples from the packages of each importation were retained, and present when the re-examinations were made. If the entire packages had been present they would have afforded no additional aid. As before suggested, no question of value was involved, nor was there any dispute about the proper description. They were admitted to be "lenses," and were ascertained so to be by the appraiser, on his original examination. He did not then describe them as such, only because his superior directed otherwise. The final examination was simply to correct this misdescription, about which there was no controversy, nor room for controversy. To hold that the packages must be present in such a case (in the absence of statutory requirement) would clearly seem to be carrying the rule beyond the reason on which it is founded; and it would furthermore result in serious disadvantage to importers, by the unnecessary retention of their merchandise.

I do not regard it as important that the appraiser, Mr. Icholtz, was unable to point out on the trial which of the samples were from one importation and which from another,—no question being raised about the description of the merchandise. When taken they were wrapped in paper and marked, and when the re-examination was made were thus distinguishable. Since the wrappers have been removed here they are so exactly alike that one cannot be known from another. Each is an accurate sample of the several importations.

As respects the importations which were originally classified as glass wrought, on which duties were paid accordingly, under protest, and the amount subsequently returned, under a second classifica-

tion, and were again and finally classified as glass wrought, I do not think the return of the money stands in the way of recovering on the final liquidation. The return of the money was simply a mistake. It left the government and the importer just where they would have stood if the original classification had been as the second was. The right to further examination and classification remained. This right terminated, however, at the end of the year after entering the goods. As respects three of the importations the right was not exercised within this period, and the classification and liquidation came too late. Fraud, or the pendency of a protest which tends to retard the proceeding, extends the time. Here, however, there was no room for a suggestion of fraud; and the protest filed to the original liquidation terminated immediately on the second being made. Its office was performed and it ceased to operate. It did not, therefore, afford any excuse for the postponement of the final liquidation, on which recovery is now sought.

For the reasons stated a new trial must be granted.