VITELLI & SON *v*. UNITED STATES (No. 1464) AND VITELLI & SON
*v*. UNITED STATES (No. 1474).[1]

1. SPECIAL DEPUTY COLLECTOR MAY LIQUIDATE AND RELIQUIDATE.

The powers and duties of collectors of customs are equally vested in their special
deputies; and the special deputies' right and power to liquidate and reliquidate
are without question.

2. COLLECTOR'S POWER TO LIQUIDATE AND RELIQUIDATE.

The power of a collector of customs to liquidate and reliquidate is vested in him
by statute and unlimited except by affirmative law. This has been recognized
by consistent, persistent, and continuous administrative practice, legislative enact-
ment, and judicial decision since the institution of his office.

3. COLLECTOR'S POWER TO LIQUIDATE—TIME.

There never has been, and is not now, a time limit within which the original
liquidation must be made.

4. COLLECTOR'S POWER TO RELIQUIDATE—LIMITATION.

The first limitation upon the collector's power to reliquidate was section 21 of
the act of June 22, 1874 (18 Stat. L., 186).

5. COLLECTOR'S POWER TO RELIQUIDATE WHEN GOODS HAVE GONE BEYOND HIS
CONTROL.

The power of the collector to reliquidate when the goods have gone beyond his
possession or control has been administratively, legislatively, and judicially recog-
nized from the earliest time.

6. COLLECTOR'S POWER TO RELIQUIDATE WITHIN YEAR FROM ENTRY.

The collector's power to reliquidate within a year after entry has received uniform
administrative, legislative, and judicial recognition prior to, and since, the passage
of the act of June 22, 1874 (18 Stat. L., 186).

7. COLLECTOR'S POWER TO RELIQUIDATE AFTER YEAR FROM ENTRY IN CASE OF
PROTEST.

The collector's power to reliquidate after the expiration of a year from entry
in case of protest has received uniform administrative, legislative and judicial
recognition prior to, and since, the passage of the act of June 22, 1874 (18 Stat. L.,
186).

8. COLLECTOR'S POWER TO RELIQUIDATE RECOGNIZED IN ACT OF MARCH 3, 1875 (18
STAT. L., 469).

The act of March 3, 1875 (18 Stat. L., 469) "restricting the refunding of customs
duties," etc., implies that the collector has an inherent general power to reliqui-
date.

9. COLLECTOR'S POWER TO RELIQUIDATE AFTER YEAR FROM ENTRY IN CASE OF
FRAUD.

The collector's power to reliquidate after the expiration of a year from entry in
case of fraud stands upon the same ground as in case of protest; and, like it, has
received uniform administrative, legislative, and judicial recognition.

10. CONSTRUCTION—"ABSENCE OF FRAUD," SECTION 21, ACT OF JUNE 22, 1874 (18
STAT. L., 186).

The statute makes the liquidation final "in the absence of fraud." This does
not necessitate a *finding* of fraud by the collector to justify reliquidation, but directs
him not to reliquidate in "the absence of fraud." If he *suspects* fraud, he can not
say that fraud is *absent*. A *well-founded suspicion* of fraud is sufficient to move him
to reliquidation.

---

[1] Reported in T. D., 36544 (30 Treas. Dec., 1191).

11. COLLECTOR'S DECISION, CONTENT OF.

The law restricts a collector's findings to *rate and amount of duty*. He can make no conclusive finding as to fraud or anything else than *rate and amount* of duty. A reliquidation involves nothing except a different finding as to *rate and amount of duty*.

12. CONSTRUCTION—"ABSENCE OF FRAUD," SECTION 21, ACT OF JUNE 22, 1874 (18 STAT. L., 186).

The words "in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee" do not restrict the *fraud* to the owner, importer, agent, or consignee.

13. EVIDENCE—ADMISSIBILITY.

In the trial before the Board of General Appraisers of a protest by F. Vitelli & Son against a reliquidation on account of fraud alleged in the original liquidation, indictments and records of acquittal in prosecutions by the United States against Joseph Vitelli for such frauds, without evidence connecting F. Vitelli & Son with Joseph Vitelli, have no probative force, and were properly excluded by the Board of General Appraisers.

14. COLLECTOR'S CONTROL OF FRAUDULENT RETURN BY WEIGHER.

That a collector may set aside a fraudulent return by a weigher can not be questioned.

15. FRAUD VITIATES.

Fraud vitiates whatever it touches, and it may be said that a liquidation induced by fraud is *no* liquidation, and a fraudulent weigher's return *no* weigher's return.

16. EVIDENCE—PRESUMPTION—BURDEN OF PROOF.

In the trial before the Board of General Appraisers of a protest against a reliquidation made more than a year after entry, the legal presumption is, as in all cases, that the collector of customs acted within the powers conferred upon him by law, and the burden is on the protestant to show the invalidity of the reliquidation.

17. EVIDENCE—PRESUMPTION—BURDEN OF PROOF.

In the trial before the Board of General Appraisers of a protest against a reliquidation made more than a year after entry, evidence that the goods had been bought and sold by importers at weights greater than the entered ones, is sufficient to establish a prima facie case of fraud and put upon the protestants the burden of overcoming it.

18. EVIDENCE—BURDEN OF PROOF.

The burden of proving the material allegations of the complaint (protest) is on the plaintiff (protestant).

19. COLLECTOR'S POWER TO TAKE UNOFFICIAL EVIDENCE AS TO WEIGHTS.

There is no doubt, at least in cases where the weigher did not follow the law or was guilty of fraud, that the collector can proceed, or direct the weigher to proceed, to ascertain from the accounts of merchants to whom the merchandise was sold its true weights and accordingly liquidate.

20. DUE PROCESS OF LAW.

The customs administrative procedure, in case of reliquidation for fraud more than one year after entry, gives the importer ample notice and abundant opportunity to defend. The record shows that such notice and opportunity were had in these cases.

## United States Court of Customs Appeals, May 29, 1916.

APPEAL from Board of United States General Appraisers, Abstract 36340 (T. D. 34742) and Abstract 36544 (T. D. 34744).

[Affirmed.]

*Albert M. Yuzzolino* for appellants.

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

*Isadore Finkler, Amicus curiæ.*

[Oral argument January 19, 1915 by Mr. Yuzzolino and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This litigation made its first appearance in this court in United States *v.* Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194). The record therein, which in all essential particulars is the same as the record herein, discloses that several importations of chestnuts and garlic by F. Vitelli & Son entered at the port of New York during the years 1905 to 1907 were liquidated for duties by the collector at that port during those years, which duties were paid. During the year 1912 the following proceedings were had:

*Report of special deputy collector.*

TREASURY DEPARTMENT, UNITED STATES CUSTOMS SERVICE,
OFFICE OF THE COLLECTOR,
*Port of New York, July 8, 1912.*

E. J. ALLENDORF, Esq.,
*Deputy Collector, Seventh Division.*

SIR: Satisfactory evidence having been produced before me showing that the returns of weight on the importations of F. Vitelli & Son, covered by the schedule below were false and fraudulent, I hereby declare the liquidations made thereon void, and direct that said entries be reliquidated on the basis of the corrected returns made by the United States weigher:

Vessel, *Koenig Albert;* arrival, October 4, 1905; entry No. 216546.

*       *       *       *       *       *       *

Respectfully,

H. C. STUART,
*Special Deputy Collector.*
W. B. A.

On July 22, 1912, F. Vitelli & Son made the following protest against said reliquidation of duties:

*Protest 661651–35451.*

RUEBSAMEN & YUZZOLINO,
COUNSELLORS AT LAW,
*Bowling Green Building, 11 Broadway, New York, July 22, 1912.*

Hon. WILLIAM LOEB, Jr.,
*Collector of the Port of New York, U. S. Custom House, New York City.*

DEAR SIR: We have just received notices of the reliquidation of duty on the following entries made by us, and on which the Government claims to be entitled to a payment of increased duty:

Entry No. 290264; per S. S. *Hamburg;* duty paid, November 4, 1907; balance claimed to be due, $52.34.

*       *       *       *       *       *       *

Making a total of $1,037.31 increase of duty claimed by the Government on the foregoing entries.

We beg to hereby protest against the said action of the collector and against the reliquidation of the duty in each of the entries above mentioned, and against the payment

of the said increase of duty claimed on the grounds, in respect to each and every one of the entries above specified, that the said reliquidations are improper and incorrect; that they are unlawful, and not made pursuant to the provisions of the statute; that the said reliquidation was not made within the period prescribed by the statute. in that the original entries and payment of duty on the importations upon which the said increase of duty is claimed were made from 4½ to upwards of 6 years prior to the date of the said reliquidations; that the said reliquidations are inaccurate and are based upon unreliable figures and data; and that the reliquidations, as originally made upon the above-named entries, are now final and binding upon all parties concerned, and beyond any dispute or scrutiny.

The undersigned also protest upon the ground that the above-mentioned reliquidations having been had, in each specific case, more than one year since the date of the original entry and payment of duty are of no effect under the provisions of the statute, for the reason that the importers deny that there was any fraud connected therewith; and they further protest upon the ground that the same subject matter involved in and brought up for issue by the said reliquidations has already been tried before a court of competent jurisdiction, and adjudged in favor of the undersigned, and for that reason the said subject matter is to be considered as *res adjudicata* in their favor.

The importers also protest against said reliquidations and each of them on the ground that the Board of General Appraisers is without jurisdiction to pass upon the issues raised thereby, and particularly that they have no jurisdiction to pass upon any issue of fraud which may be raised by the said reliquidations, by reason of their being made more than one year after the original entry and payment of duty.

We therefore protest against any claim of payment of the said sum of $1,037.31 as an increased duty to the Government based upon the foregoing alleged reliquidations.

Respectfully, yours,

F. VITELLI & SON,
*3 President Street, Brooklyn, N. Y.*
RUEBSAMEN & YUZZOLINO,
*Attys. for F. Vitelli & Son, No. 11 Broadway,*
*Borough of Manhattan, New York City.*

Original received July 24, 1912.
Indorsed: Customhouse, New York. Received July 24, 1912.

Thereafter, on July 26, 1912, the importers sent the following notice to the collector of customs at that port:

*Letter from attorneys for importers.*

RUEBSAMEN & YUZZOLINO,
COUNSELLORS AT LAW,
*Bowling Green Building, 11 Broadway, New York, July 26, 1912.*
Hon. WM. LOEB, Jr.,
*Collector of Port of New York,*
*United States Customhouse, New York.*
*In re* F. Vitelli & Son.

DEAR SIR: We beg to hereby notify you that our clients, Messrs. F. Vitelli & Son, of No. 3 President Street, Brooklyn, have to-day made a payment to the collector of the port of New York of $1,037.31 as the amount of increased duties claimed by the Government, of which they were notified on July 12, 1912. Said payment of $1,037.31 is made under protest, the grounds of which were fully set forth in the written protest filed in your office on July 24, 1912.

Very respectfully,

RUEBSAMEN & YUZZOLINO,
*Attorneys for F. Vitelli & Son.*

August 17, 1912, the collector, under articles 1073 and 1074, Customs Regulations of 1908, transmitted the protest and record before him to the Board of General Appraisers for review and decision by the following:

*Report of the collector.—August 17, 1912.*

Respectfully referred to the Board of United States General Appraisers for decision.

The payment forming the subject of the protest was made in satisfaction of the claim of the United States for increased duties found to be due on certain importations of chestnuts and garlic.

Evidence was produced to show that the returns of the United States weighers were false and fraudulent. Hence the liquidations were declared void and reliquidations made on the true weights as found in the amended returns of the United States weigher.

The limitation for the reliquidation of entries found in section 21, act of June 22, 1874, does not apply in cases of fraud. Note letter herewith, dated July 8, 1912, of Mr. H. C. Stuart, directing reliquidation. Note also the indorsement of the United States weigher on the returns attached to each entry.

The assessment of duty as made is affirmed. Protest was filed within statutory time.

WM. LOEB, Jr., *Collector.*

The record also recites that on each entry there was attached the original weigher's return, with a statement on it signed by the United States weigher, as follows: "This return is hereby declared void because of fraud. Reliquidate on basis of corrected return attached." The record further discloses that upon each entry the following order is written: "Reliquidate and assess duty upon the basis of the corrected return of the United States weigher attached, the original return being false and fraudulent."

The original and the amended weigher's returns are a part of the record and were before the board and the court in that case as well as in this. From these this court found and recited as facts in United States *v.* Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194) as follows:

These amended returns and the reliquidation thereon relate only to garlic and chestnuts, while some of the entries, 14 in number, cover in addition other merchandise. Upon these corrected weigher's returns are written statements to the effect that the greater part of the reliquidated merchandise had been traced from the importers to various persons who had weighed the same and kept a record of such weights, with which the weights shown in the corrected returns substantially correspond; that in some instances the merchandise had been paid for upon the basis of such weights; and that in at least one case the importers had billed the goods at 46,253 pounds, which was some 3,500 pounds greater than the weight thereof as originally returned by the weigher. We have examined some of the files relating to all these 14 entries, and therefrom it appears that the corrected returns increase the weights above those originally returned in amounts varying from 1,000 to 16,000 pounds in each of such entries.

The record in suit No. 1474 in this case differs only in that precisely parallel action was had by the collector of customs, wherein he himself acted, instead of by a deputy collector of customs.

At the original hearing before the Board of General Appraisers much discussion was had as to whether the burden of proof was upon the importers or upon the Government, in view of the fact that the right of the collector to reliquidate more than one year after the original liquidation, there being no protest in that case, could be exercised only in the presence of fraud. Counsel for the importers, however, offered in evidence certain indictments and the records of acquittal of the indicted person, claiming that these records made a case *res adjudicata*. Upon argument the board excluded the indictments and records of acquittal and took the question of the burden of proof under advisement. On December 5, 1912, the board made an interlocutory order holding that the burden of proof was upon the Government, and duly set the case for further trial on December 18, 1912. Thereupon all parties appeared, counsel for the Government noted an exception to the ruling of the board that the burden of proof was upon the Government to prove fraud, and the case was submitted by all parites. The decision of the board followed, in accordance with its interlocutory order sustaining the protests. Upon appeal to this court, February 10, 1914, after reciting the foregoing facts as shown by the record before the board, this court reversed their decision, holding that upon the record as presented to the board the burden of proof was upon the importers.

On February 17, 1914, upon appearance of the parties before this court, motion was duly made by the appellees for a modified order remanding the case to the board for a new trial and an amendment of the court's previous decision accordingly, which motion was granted, and on February 19, 1914, mandate of the court to the board was accordingly made. On May 25, 1914, pursuant to the above mandate the case was called for hearing by the board, all the parties appearing. Thereupon counsel for the importers made the following statement:

Mr. YUZZOLINO. In these cases up to the last time they were on the docket I had intended to go into the testimony and offer evidence and proof of the weights, etc. I have now decided not to do that and am simply going to make offers on the record, then make some objections on the record, and submit on that. I offer, first, the certified copies of the indictments found by the Circuit Court of the United States for this district, three of them, together with a certified copy of the records of acquittal.

Objection was renewed by counsel for the Government to the admission of the indictments and records of acquittal, which objection was sustained by the board, to which counsel for the importers duly excepted, stating:

Mr. YUZZOLINO. The importer excepts to the ruling of the board excluding the indictments on the ground that they show conclusively the nonexistence of fraud in the making of the entries, and this being the issue, *i. e.*, fraud in making these entries, * * *.

While the importers offered no further evidence in the case, they made the following statement:

The importer also excepts to the ruling of the court to the effect that the burden is upon him to show nonexistence of fraud in these cases, upon the ground that it imposes upon him an unlawful, unreasonable, and impossible burden, as a condition to his availing himself of the benefits of section 21 of the act of June 22, 1874, and therefore deprives him of his property without due process of law, and is in violation of his rights under the United States Constitution.

Accordingly the board on August 21, 1914, following the previous decision of this court in United States *v.* Vitelli (5 Ct. Cust. Appls., 151; T. D. 34194), overruled the importers' protests. The importers duly appeal to this court for a reversal of that decision.

After submission of the case, by permission, counsel for the appellants bring to the attention of the court decisions in United States *v.* Sherman & Sons Co. (237 U. S., 146), decided by the Supreme Court of the United States; also the decision of the United States District Court for the Southern District of New York, United States *v.* Federal Sugar Refining Co. (211 Fed., 1016), both claimed by appellants to be decisive of this case.

The questions herein involved are of far-reaching importance in the administration of the customs laws, involving the right of a collector of customs to reliquidate an entry in any case after one year after the original liquidation; the right of the collector to reliquidate at any time after the goods have gone out of customs possession or control; and the respective jurisdictions of the Board of General Appraisers and the United States District Courts in the matter of the collection of the customs revenues in cases where reliquidation has been made after one year after the original liquidation and in cases where the goods have gone beyond the possession or control of the Government. In view of the far-reaching importance of these appeals and the claimed conflict of the cited decisions, the Attorney General has, under section 195 of the judicial code, filed with this court a certificate to the effect that the case is one of such importance as to render expedient its review by the Supreme Court. In this view and that the subject may be viewed in all its bearings this court herein gives more extended consideration to the case than otherwise would be had.

The court is of the opinion that there are decisive differences between both the facts and the legal aspects of this and the two cases urged. These differences will later be considered. Preliminarily certain contentions by appellants should be noted.

More by innuendo than argument action by a special deputy collector is questioned. It is sufficient to say that such, if sound, would only affect suit No. 1464 herein, for in suit No. 1474 action was had by the collector in person. That all the powers and duties of collectors of customs are equally vested in their special deputies is well settled. Revised Statutes (secs. 2625, 2630, and 2633); article 1434, Customs Regulations of 1908; Falleck *v.* Barney (8

Fed. Cas., 974, No. 4625); Lehmaier *v.* Maxwell (15 Fed. Cas., 250, No. 8214); Schmaire *v.* Maxwell (21 Fed. Cas., 700, No. 12460); United States *v.* Barton (24 Fed. Cas., 1025, No. 14534); Chadwick *v.* United States (3 Fed., 750); Frelinghuysen *v.* Baldwin (12 Fed., 395). Moreover, section 13 of the customs administrative act of 1890, under which action in these cases was had, expressly provides that "the collector or *person acting as such* shall ascertain, fix, and liquidate the rate and amount of the duties." The affirmation by the collector herein (suit No. 1464) should be regarded as it imports, his letter of transmittal to the Board of General Appraisers, Customs Regulations of 1908, articles 1073 and 1074, stating as therein required, "the reason which governed him in the assessment of duty."

Prelusively, consideration will be had of the apposite general fundamentals. Primarily, the issues here concern the power of a collector of customs to liquidate and reliquidate entries. Whence does he derive that power generally and particularly in these cases? It has been often said that the exercise of the power of reliquidation by a collector of customs is an implied power finding no warrant in the express law, but founded upon implication from section 21 of the act of June 22, 1874, *infra.*

The court is of the opinion that such is not accurate, that the contrary is true and that logic and the authorities will support the conclusion *that the power of the collector to make liquidations and reliquidations is rested upon express statute.*

There are in the statutes grants of power to liquidate and also limitations upon its exercise which should be carefully distinguished. That power as given by the granting statutes was and is unlimited as to the time or the number of liquidations. The act of reliquidation, therefore, is within the grant of power of liquidation originally granted without qualifications as to time or repetition.

This power of collectors of customs to liquidate or, to be exact, to "estimate the amount of the duties payable * * *, indorsing the said amount upon the respective entries" of imported merchandise, was originally granted by section 21 of the act of Congress, March 2, 1799 (1 Stat. L., 627), as follows:

SEC. 21. * * * The collector * * * shall receive the entries of all ships or vessels and of the goods, wares, and merchandise imported in them; shall, together with the naval officer where there is one, or alone where there is none, estimate the amount of the duties payable thereupon, indorsing the said amount upon the respective entries; shall receive all moneys paid for duties, and take all bonds for securing the payment thereof; * * *.

That language was in all essential particulars made the language in part of section 2621 of the Revised Statutes, reading:

SEC. 2621. At each of the ports * * * it shall be the duty of the collector:

Third. To receive the entries of all ships or vessels, and of the goods, wares, and merchandise imported in them.

Fourth. To estimate, together with the naval officer where there is one, or alone where there is none, the amount of the dues payable thereupon, indorsing such amount upon the respective entries.

Fifth. To receive all moneys paid for duties, and take all bonds for securing the payment thereof.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Without express repeal section 13 of the customs administrative act of June 10, 1890 (26 Stat. L., 131), provided:

SEC. 13. \* \* \* And the collector or the person acting as such shall ascertain, fix, and liquidate the rate and amount of the duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law.

The tariff act of August 5, 1909 (36 Stat. L., 11), subsection 13 of section 28 thereof, and the tariff act of October 3, 1913 (38 Stat. L., 114), subsection M of section 3 thereof, reenacted this provision *in hæc verba.* While these cases arose under the act of 1897 (30 Stat. L., 151), the reenactments serve as a congressional adoption of the construction given the earlier acts.

Acting under the authority of these words, unchanged until 1890 and then if anything enlarged in scope, from the foundation of our Government to date collectors of customs have liquidated and reliquidated entries. If there were any doubt as to the intended extent of this grant of power, each and every one of these limiting acts is a legislative declaration of its existence to the extent of the limitation, else why the idle legislation?

The first acts of limitation were section 5 of the act of March 3, 1857 (11 Stat. L., 192), and sections 14 and 15 of the act of June 30, 1864 (13 Stat. L., 202), providing that the decision of the collector of customs "shall be final and conclusive against the owner, importer, consignee or agent of" imported merchandise unless protested as therein prescribed to the Secretary of the Treasury, etc.

The customs administrative act of June 10, 1890 (26 Stat. L., 131), section 14, subsection 14 of section 28 of the act of August 5, 1909 (36 Stat. L., 11), and subsection N of section 3 of the act of October 3, 1913 (38 Stat. L., 114), are in essentially the same language, reading, " that the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, \* \* \* shall be final and conclusive against all *persons* interested therein, unless the owner, importer, consignee, or agent of such merchandise" should as therein prescribed protest to the Board of General Appraisers with right thereafter to appeal to the courts. The language, "shall be final and conclusive against all *persons* interested therein," is common to all these acts. It has been uniformly held, and never contrarily, to be a limitation upon the remedies of the *importers* and *not* the powers of collectors. United States *v.* Phelps *et al.* (17 Blatch., 312; 27 Fed.

Cas., 521, No. 16039); United States *v.* Leng (18 Fed., 15); United States *v.* Mexican International R. Co. (C. C. A., 151 Fed., 545); Calhoun *v.* United States (184 Fed., 499); *In re* J. W. Hampton, jr., & Co., G. A. 1304 (T. D. 12655); *In re* Rheinstrom Bros., G. A. 1338 (T. D. 12689); *In re* Henry Schmidt, G. A. 1798 (T. D. 13496); *In re* Geo. Knowles & Son, G. A. 2305 (T. D. 14459); *In re* Foote, Reed & Co., G. A. 3810 (T. D. 17935). Repeated reenactments have legislatively adopted this contemporary construction. United States *v.* Midwest Oil Co. (236 U. S., 459, 472); Tucker *v.* Oxley (5 Cranch, 9 U. S., 34); Robinson & Co. *v.* Belt (187 U. S., 41); Copper Queen Mining Co. *v.* Arizona Board (206 U. S., 474); Fairbank *v.* United States (181 U. S., 283). It was philosophic that Congress having given the importer the right not given collectors to correct errors of liquidation by protest Congress did not wish to deny the Government the right to correct such errors, which could only be done by reliquidation. These acts, however, were of limitation only in so far as they deprived the owner, etc., of the power after a prescribed time to enforce a contrary or defend against a liquidation.

The entire breviary of laws granting and limiting *the power of collectors* of customs to estimate or reestimate the rate and amount of duties upon imported merchandise embraces but a single paragraph directly limiting that power, to wit, section 21 of the act of June 22, 1874 (18 Stat. L., 186), as follows:

SEC. 21. That whenever any goods, wares, and merchandise shall have been entered and passed free of duty, and whenever duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner, importer, agent, or consignee, such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties.

That act, though treating extensively of the duties of collectors, in no particular expressly added to his power of liquidation.

There is here presented a striking example of legislative interpretation of, as distinguished from the coordinate rule of legislative adoption of, a statute as construed by the courts or administered by departments. The former rule, equally well if not more logically established, is expressed by the Supreme Court in Cope *v.* Cope (137 U. S., 682, 688), that—

Several acts of Congress, dealing  *  *  *  with the same subject matter, should be construed not only *as expressing the intention of Congress* at the dates the several acts were passed, but *the later acts should also be regarded* as legislative interpretations of the prior ones. United States *v.* Freeman (3 How., 556, 564); Stockdale *v.* Insurance Co. (20 Wall., 323).

Under said section 21 the fact that the statute did not commence to run until after one liquidation, the necessary implication is of a power to make a second liquidation, else the statute is entirely nuga-

tory. The statute concededly does not grant or invest a power to liquidate. The necessity for and the enacted limitation upon the exercise of that power, and its repetition as herein provided, is a legislative interpretation that the original grant included and vested the power of reliquidation in the collector. The power of the collector to liquidate and reliquidate Congress here assumes and interprets resides in the previous unlimited express statutory grants; its restrictions in the limiting acts. Calhoun *v.* United States (184 Fed., 499); United States *v.* Phelps *et al.* (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039).

*The rule is elementary and fundamental that long-continued departmental practice and judicial construction of statutes while not absolutely controlling are not to be disregarded without the most cogent and persuasive reasons.* United States *v.* Midwest Oil Co. (236 U. S., 459); Edwards *v.* Darby (12 Wheat., 25 U. S., 206); Pennoyer *v.* McConnaughy (140 U. S., 1); Copper Queen Mining Co. *v.* Arizona Board (206 U. S., 474), and numerous cases therein cited. That a construction of an act—and this was said of the act of June 22, 1874 (18 Stat. L., 186)—by the Treasury Department, followed for many years without any attempt by Congress to change it should be followed by the Supreme Court, see Robertson *v.* Downing (127 U. S., 607).

There is herein questioned not only (1) the existence of any express statutory authority for the collector to reliquidate, but also (2) the power of the collector to reliquidate within a year after entry when the goods have gone beyond his possession or control, and (3) the right of reliquidation for fraud in any case after one year after entry. This court is of the opinion that a full review of the authorities is convincing beyond question that not only are all these powers vested by express law in the collector, as heretofore considered, but that such has been the uniform legislative, departmental, and judicial construction of those statutes from the foundation of the Government.

Not only was the enactment of section 21 of the act of June 22, 1874 (18 Stat. L., 186), a legislative interpretation of this preexisting power in collectors of customs long prior to that legislation, but by and from the decisions of earliest record to the present these acts have been uniformly and without exception held to empower collectors to liquidate and reliquidate within and after one year from entry and without any limitation upon that power save and except as follows:

(1) *Prior to the enactment of section 21 of the act of June 22, 1874 (18 Stat. L., 186), there was no limitation in this particular upon a collector and he could reliquidate at any time.* In a very early case the powers of a collector of customs in these particulars were ably amplified. This case has with great frequency been cited, quoted,

and followed and on this point has never been questioned or over-ruled. In that case the duties had been twice previously liquidated. The court speaks of the powers of the collector *assuming them otherwise vested* than by the acts of 1864 (13 Stat. L., 202) and 1874 (18 Stat. L., 186), which are characterized as limitations upon that power. The following language of Judge Blatchford therein is instructive (United States *v.* Phelps *et al.*, 17 Blatch., 312; 27 Fed. Cas., 521 No. 16039):

It is well settled that the duties upon all goods imported constitute a personal debt due to the United States from the importer; that the consignee is, for this purpose, treated as the owner and importer; that such debt is independent of any lien on the goods and of any bond given for the duties; and that the right of the Government to the duties accrues when the goods have arrived at the proper port of entry. Meredith *v.* United States (13 Pet., 38 U. S., 486). By section 2931 of the Revised Statutes the decision of the collector, in liquidating duties, as to the amount of duties on imported goods, is made final and conclusive against all persons interested in such goods, unless notice in writing of dissatisfaction with such decision is given to the collector by the importer within 10 days after the liquidation, and unless within 30 days after the liquidation there is an appeal by the importer from the liquidation to the Secretary of the Treasury. Such liquidation is not made final and conclusive as against the United States. There is nothing in the section which forbids a reliquidation or a new decision by the collector, even after the payment of all the duties fixed by a prior liquidation, or even after the refunding of money deposited beyond the amount of duties so fixed; or which forbids a new decision by the collector as to the law on the same facts, or a new decision as to facts, based on additional or new or different facts. This view is confirmed by the enactment of section 21 of the act of June 22, 1874 (18 Stat., 190), which is as follows: "Whenever any goods, wares, and merchandise shall have been entered and passed free of duty, and whenever duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner, importer, agent, or consignee, such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties." This provision was in force when the transactions in this case took place. It applies to the United States. The expression "all parties" includes the United States. By section 2931 of the Revised Statutes there was no limitation imposed on the power of the collector to reliquidate when such reliquidation was in the interest of the Government. But by section 21 of the act of 1874 *a limitation is imposed on such power*, so that after the entry of the goods and after the liquidation and payment of duties on them and after the delivery of the goods to the importer such settlement of duties, if there be no fraud and no protest by the importer, is, after one year from the entry, final and conclusive even as respects the Government. In the present case the suit was brought before the one year expired. The collector, therefore, had power to make the reliquidation of July 20, 1878.

That the power of the collector to reliquidate was unlimited prior to the act of June 22, 1874 (18 Stat. L., 186), is well established. Dumont *v.* United States (98 U. S., 142); Westray *v.* United States (18 Wall., 85 U. S., 322); United States *v.* Calhoun (184 Fed., 499); United States *v.* Leng (18 Fed., 15); United States *v.* Phelps *et al.*

(17 Blatch., 312; 27 Fed. Cas., 521, No. 16039); Watt *v.* United States (15 Blatch., 29; 29 Fed. Cas., 441, No. 17292); United States *v.* Cousinery *et al.* (7 Ben., 251; 25 Fed. Cas., 677, No. 14878); United States *v.* Campbell (10 Fed., 816; T. D. 8695.)   So where the act does not apply.   (T. D. 7376); *In re* Paris, Allen & Co., G. A. 2411 (T. D. 14689); T. D. 16193; *In re* Ford, G. A. 3167 (T. D. 16338).

(2) *That the power of reliquidation exists where the goods have gone beyond the possession or control of the collector has been the subject of equally uniform decisions.*

Upon principle, it is a strange doctrine to judicial or quasi-judicial procedure that the validity of the proceedings depends upon the ultimate ability to satisfy the judgment rendered or order made.

That possession and control of the goods were necessary to exercise of the power of reliquidation was not the intention of Congress is evidenced by its authorization of the collector to take a bond for payment of duties.   (R. S. U. S., 2621.)

This doctrine is concisely stated in United States *v.* Mexican International Railroad Co. (C. C. A., 151 Fed., 545):

Before "the expiration of one year from the time of entry" the settlement of duties is not conclusive on the Government.   Before the expiration of the one year the collector may reliquidate the assessment, although the duties first assessed have been paid *and the goods withdrawn for consumption.*

Such has been the uniform interpretation by the courts and Treasury Department of the powers of the collector.   Beard *v.* Porter (124 U. S., 437); Abner Doble Co. *v.* United States (119 Fed., 152); United States *v.* Mexican International Railroad Co. (C. C. A., 151 Fed., 545); Pacific Creosoting Co. (C. C. A., 196 Fed., 35); United States *v.* Tiffany & Co. (C. C. A., 151 Fed., 473); Louisville Pillow Co. *v.* United States (C. C. A., 144 Fed., 386); Neresheimer *v.* United States (131 Fed., 977); Knowles & Sons *v.* United States (122 Fed., 971); United States *v.* Cobb *et al.* (11 Fed., 76); United States *v.* Campbell (10 Fed., 816); United States *v.* Comarota (2 Fed., 145); United States *v.* Phelps *et al.* (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039); T. D. 3972; T. D. 7376; *In re* Hampton, jr., & Co., G. A. 1304 (T. D. 12655); *In re* Rheinstrom Bros., G. A. 1338 (T. D. 12689); *In re* Schmidt, G. A. 1798 (T. D. 13496); *In re* Knowles & Son, G. A. 2305 (T. D. 14459); *In re* Foote, Reed & Co., G. A. 3810 (T. D. 17935); *In re* Hampton, jr., & Co., G. A. 1304 (T. D. 12655), approved in 21 Opinions of Attorney General, 334; *In re* Wyman & Co., G. A. 6536 (T. D. 27887); *In re* Forbes & Wallace, G. A. 5118 (T. D. 23655).   Of course this power includes that to so reliquidate for fraud or any other cause affecting the rate or amount of duty.

(3) *That a collector of customs can, after a prior liquidation, reliquidate within one year after entry has been from the earliest period assumed and decided.*   Robertson *v.* Downing (127 U. S., 607);

Beard v. Porter (124 U. S., 437); Abner Doble Co. v. United States (119 Fed., 152); United States v. Fox et al. (53 Fed., 531); United States v. Frazer (10 Ben., 347; 25 Fed. Cas., 1207, No. 15161); T. D. 3972; T. D. 8398; T. D. 8695; In re Fleitmann & Co., G. A. 738 (T. D. 11563); In re Strauss, Sachs & Co., G. A. 2743 (T. D. 15309); In re Hartman & Darling, G. A. 3610 (T. D. 17436); In re Forbes & Wallace, G. A. 5118 (T. D. 23655); In re Stone & Co., G. A. 5406 (T. D. 24623); In re Wyman & Co., G. A., 6536 (T. D. 27887); In re Hampton, jr., & Co., G. A. 1304 (T. D. 12655); T. D. 16503.

This point is well established by the single fact that the Treasury regulations so authorizing have long been in full force and effect and the power unquestioned.

The regulations of the Treasury Department from 1881 to date, construing the statutes granting powers to collectors to reliquidate, have directed them, upon receipt of protest in their opinion well taken, to reliquidate. T. D. 4972; Customs Regulations of 1884 (art. 362); Customs Regulations of 1892 (art. 931); Customs Regulations of 1899 (arts. 1455 and 1463); Customs Regulations of 1908 (art. 1072, now effective); In re Hampton, jr., & Co., G. A. 1304 (T. D. 12655); T. D. 16503.

"When there has been a long acquiescence in a regulation" (Treasury) "and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons. United States v. Hill (120 U. S., 169, 182); United States v. Philbrick (120 U. S., 52, 59); Brown v. United States (113 U. S., 568, 571)." Robertson v. Downing (127 U. S., 607, 613).

(4) At present the law prescribes no time limit within which the collector shall make his original liquidation. Pacific Creosoting Co. v. United States (C. C. A., 196 Fed., 35); Beard v. Porter (124 U. S., 437); Abner Doble Co. v. United States (119 Fed., 152); Gandolfi et al. (C. C. A., 74 Fed., 549); United States v. De Rivera et al. (73 Fed., 679); United States v. Leng (18 Fed., 15); United States v. Phelps et al. (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039); T. D. 7376.

(5) It has been uniformly held or assumed under the act of June 22, 1874 (18 Stat. L., 186), that when liquidation is had and protest made, the collector can reliquidate more than one year after entry. United States v. Whitridge (197 U. S., 135); United States v. Tiffany & Co. (C. C. A., 151 Fed., 473); Cassel v. United States (146 Fed., 146); Gulbenkian v. Stranahan (158 Fed., 836); United States v. Dickson (C. C. A., 139 Fed., 251); United States v. Phelps et al. (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039); T. D. 8583; T. D. 16193. Statutes in later acts directing the collector to reliquidate protests after final decision thereon in accordance therewith, we shall hereafter

show, are not exceptions to the exercise of an existing power in the collector, but assume the existence of that power and direct its exercise in accordance with the mandate of supervising authorities or tribunals.

It may well be doubted if the judicial history of the Government affords another instance wherein such a long-continued, uniform. and absolutely unquestioned judicial and administrative interpretation and practice under a statute or of its granted powers has obtained. Not only has there here been the legislative interpretation of those preexisting powers by the act of June 22, 1874 (18 Stat. L., 186), but the uniform judicial and administrative interpretations enumerated extending from the earliest date to the present, and also the subsequent and repeated legislative approval of those judicial and administrative interpretations, at least from Revised Statutes 2621 to and inclusive of section 13 of the customs administrative act of 1890 (26 Stat. L., 131), subsection 13 of section 28 of the tariff act of 1909 (36 Stat. L., 11), and subsection M of section 3 of the tariff act of 1913 (38 Stat. L., 114), has been to the same effect.

Whether we rest these powers of reliquidation long exercised by collectors of customs, as aforesaid, in express or implied statutory authority, if there is any virtue in the philosophy of the rule of long-continued uniform interpretation, usage, and practice, which makes for the safety and repose of commerce and the rights of man, herein is afforded a vindicating exemplar. The point may well be concluded with the language of the Supreme Court in United States *v.* Midwest Oil Co. (236 U. S., 459, 472):

It may be argued that while these facts and rulings prove a usage they do not establish its validity. But government is a practical affair intended for practical men. Both officers, lawmakers, and citizens naturally adjust themselves to any long-continued action of the executive department, on the presumption that unauthorized acts would not have been allowed to be so often repeated as to crystallize into a regular practice. That presumption is not reasoning in a circle, but the basis of a wise and quieting rule that in determining the meaning of a statute *or the existence of a power* weight shall be given to the usage itself, even when the validity of the practice is the subject of investigation.

This principle, recognized in every jurisdiction, was first applied by this court in the often cited case of Stuart *v.* Laird (1 Cranch, 299, 309). There, answering the objection that the act of 1789 was unconstitutional in so far as it gave circuit powers to judges of the Supreme Court, it was said (1803) that "*practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer and has indeed fixed the construction.*" It is a contemporary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled.

Robinson & Co. *v.* Belt (187 U. S., 41); Copper Queen Mining Co. *v.* Arizona Board (206 U. S., 474); Fairbank *v.* United States (181 U. S., 283).

Other acts *in pari materia* claimed by appellants to *imply* a contrary view in fact support the views heretofore expressed. These acts read in conjunction with those of grant and limitation upon the powers of a collector of customs to liquidate and reliquidate conduce to the same conclusion, the contrasted provisions of those acts being explanatory of these. *The Amelia* (1 Cranch, 5 U. S., 1); Merritt *v.* Cameron (137 U. S., 542); Pollard *v.* Kibbe (14 Pet., 39 U. S., 353); Nobles *v.* Georgia (168 U. S., 398).

It is claimed that the act of March 3, 1875 (18 Stat. L., chap. 136, p. 469), authorized reliquidation for clerical errors, and hence implied absence of a general power of reliquidation in the collector. We think the contrary. Prior to this act the Secretary of the Treasury, by sections 3012½ and 3013 of the Revised Statutes, had unlimited power of *refund of duties* unascertained and ascertained, depending solely upon his judgment that they should be repaid. The act of March 3, 1875, was entitled, *"restricting the refunding* of customs duties," etc. It was addressed to and restrictive of the powers of the Secretary of the Treasury to make refunds of customs duties. It then provided "that this act *shall not affect* the refund of excess of deposits based on estimated duties *nor prevent* the correction of errors in liquidation," etc. How a provision expressly declared "shall not affect" "nor prevent" exercise of a power impliedly grants such we can not understand. Obviously, however, it presupposes the existence of and preserves a preexisting power which was probably being exercised by the Secretary of the Treasury, and this act was so construed. (21 Op. Atty. Gen., 251.) That it did not affect the power of reliquidation in the collector was held in United States *v.* Phelps *et al.* (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039). That the act related to the Secretary of the Treasury and was vesting in another official than the collector power *to grant certain refunds* arising out of, without changing or affecting, liquidations, is made certain by the amendatory act, section 24 of the act of June 10, 1890.

Other acts or parts thereof *in pari materia* also afford instruction. Sections 14 and 15, act of June 10, 1890 (that being the act under which these reliquidations were made), provide that after final decision of the Board of General Appraisers or courts the papers shall be transmitted to "the proper collector or person acting as such, who *shall* liquidate the entry *accordingly,*" etc. These provisions do not *empower* but *direct* reliquidation by an officer already having that power, who has previously liquidated upon a different basis. The provision assumes existence of that power in the collector and none else and provides that upon mandate it shall be exercised by the collector according to the decision of another and in a manner different from its previous exercise. Without this provision of law under what authority could the collector be *compelled* to reliquidate?

Section 25 of the tariff act of 1894 (28 Stat. L., 552), provided that the Secretary of the Treasury should estimate and proclaim the value in our money of foreign coins and that those values "shall be followed in estimating the value" of all imports, etc., and "*Provided*, That the Secretary of the Treasury may order the reliquidation of any entry at a different value," etc. That statute does not *empower* reliquidation, but places in the power of the Secretary of the Treasury superior authority to *direct* reliquidation by the collector so authorized by law, regardless of the opinion of or other superior authority over the collector. This precise point is confirmed and the compulsory power indicated by the familiar history of the proceedings under that section. United States *v.* Whitridge (197 U. S., 135).

Revised Statutes, section 2857, provides that change may be made of the destination of goods by entry at the port of arrival and, where the triplicate invoice has not arrived, a certain routine, "and the duty shall not be finally liquidated until such triplicate, or a certified copy thereof, shall have been received. Such liquidation, however, shall not be delayed longer than 18 months from the time of making such entry." Here again Congress, assuming an unlimited power of liquidation in the collector, by statute directs its exercise in words of *direction* only and not of *authorization*. These various acts, however, authorizing various officials to *direct* and requiring the collector as late as 18 months after entry to liquidate *as directed* are instructive that Congress did not confine that power to the period within which the goods remained in the possession or control of the collector, and in every instance assumes an unlimited power previously vested and existing in the collector to so reliquidate.

This exceptionally consistent construction of the statutes *in pari materia* rests upon the clear and unchanged language of the empowering law and what would seem equally clear language of section 21 of the act of June 22, 1874, as viewed, treated, *and interpreted* by Congress in a series of enactments *in pari materia* extending over a period of almost forty years. This consistent and uniform view of Congress is instructive. Cope *v.* Cope (137 U. S., 682–688).

Elementally, an unlimited power of liquidation (uniformly construed as, if not literally, including the power of reliquidation) having been vested in the collector by previous acts of Congress, this restraining provision upon those powers was enacted. Logically if there were exceptions to the restraining act the powers of the collector in the instances of those exceptions continued unrestrained and unlimited. These exceptions were two—in the absence of a protest and in the absence of fraud. They are coequal in every respect. All conceded and it has been uniformly held (cases *supra*) that, where a protest is filed, the power of the collector to reliquidate is not made final

in the year, that the act of 1874 does not apply to such cases, and that the collector can reliquidate whenever the protest is out of the case. (Cases *supra*.) The limitations upon the extent of such a reliquidation are not here in question or decided. The right and power and its preservation by the statute alone are important and declared. Wherein does the other exception differ? If the presence of a protest makes the act inapplicable, why does not "fraud" do likewise? The two must stand or fall together. If there is power in the collector to reliquidate after one year after entry in cases of protests, which is conceded by all, by those exact words that power is reserved to him in cases of fraud. The cases are so exactly parallel and the statute so unmistakably expounds itself that argument as to its meaning and effect would be offensive to common, not to say legal, intelligence.

In United States v. Sherman & Sons Co. (237 U. S., 146), no doubt because, as shown by the briefs, so represented to the court and not controverted, it was assumed as a fact, speaking of section 21 of the act of June 22, 1874, and stated:

It is a significant fact that although the act has been in force for more than 40 years there are only two instances reported in which the collector, after the expiration of one year, has attempted to reliquidate because of the existence of fraud. Those two cases—United States v. Vitelli, Court of Customs Appeals (1914), and United States v. Federal Sugar Co. (211 Fed., 1016)—are of recent date and in direct conflict with each other.

Instances of reliquidation by collectors for fraud covering a period of more than a quarter of a century past *are* reported.

There is reported in T. D. 16193, of date June 27, 1895, the case of Gandolfi *et al.*, wherein cheese imported and entered by pro forma invoice in November, 1891, was *reliquidated March 7, 1893*, which action by the collector in suit to recover the balance was in part justified by the United States upon the ground that "sufficient had been proved to raise a presumption of fraud, which in itself prevented the year from running, as provided in section 21 of the act of June 22, 1874."

This decision shows not only the fact that the collector so acted but that the Treasury Department approved and adopted this action of the collector. Subsequently, as shown, this course was approved by the Treasury Department.

In G. A. 3167 (T. D. 16338) is reported an instance wherein the collector at the port of Boston in October, 1894, reliquidated entries of bags previously liquidated in September, 1892, and January, 1893, more than a year thereafter, upon the ground of fraud. Upon protest and trial section 21 of the act of June 22, 1874, being urged as a limitation upon the action of the collector the board found fraud and sustained the collector.

In G. A. 3842 (T. D. 17967) an entry on October 8, 1895, of black hatters' plush at the port of Cleveland, Ohio, was liquidated by the

collector at that port October 18, 1895, and reliquidated December 10, 1896, more than a year after entry. It is reported in the board's decision that "the act of reliquidation, subject of complaint, was performed by the collector under section 21 of the act of June 22, 1874, on the ground that appellants were guilty of misrepresentation or fraud in making said entry." On trial the board conceded the law to be that such a liquidation would be valid, but found against the Government on the fact of fraud in the case.

In 1905–1907 F. Vitelli & Son imported at New York chestnuts and garlic, which were liquidated during those years. Subsequently and during the year 1912 the collector reliquidated upon the alleged ground of fraud and reported such and that by reason thereof section 21 of the act of June 22, 1874, did not apply. The importers protested, denying the existence of fraud, but in no way challenging the legal right of the collector to so liquidate. On trial before the Board of General Appraisers it was held that the collector could, under section 21, *supra*, reliquidate where there was fraud in the case, but that the burden to prove such before the board was upon the Government. G. A. 7418 (T. D. 33115). The Government appealed to this court. Herein the right of the collector to reliquidate after one year where there was fraud in the case was unchallenged, was not in issue, nor decided. The sole issue decided was as to the burden of proof. A new trial was granted. United States *v.* F. Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194). Further, neither on rehearing before the board nor on this appeal to this court, nor until presentation to the Supreme Court in the case of Sherman & Sons Co., was ever the right of the collector to reliquidate one year after entry, where there was fraud, challenged or questioned. After that decision, *and by supplemental brief*, for the first time in this case and court was that issue made. Until that day, May 1, 1915, the right of a collector to reliquidate for fraud more than one year after entry under the act of 1874 was herein never challenged, but always assumed. G. A. 7418 (T. D. 33115); United States *v.* F. Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194).

In 1909 Sherman & Sons Co. imported at New York certain laces upon which duties were liquidated during that year. In 1913 the collector reliquidated, *finding* fraud as a fact in the case. The importers declined to pay the additional duties and the Government brought suit in the United States District Court of that district. Demurrers were filed and sustained, solely upon the issue as to the allegations of fraud in the complaints, and on appeal to the United States Circuit Court of Appeals that court certified three questions to the Supreme Court. Neither by these questions nor otherwise in the case was the legal right of the collector to reliquidate for fraud one year after entry challenged. The questions certified inquired,

could the collector *make a finding of fraud* after the one year, which, if not protested, would become *res adjudicata* as to the importers? Until the filing of the importers' brief in that case in the Supreme Court, December 14, 1914, this legal right, so far as we can discover, was never in any jurisdiction challenged, and is reported to have been exercised unchallenged, and section 21 of the act of June 22, 1874 (18 Stat. L., 186), been so interpreted ever since its enactment.

In Robertson *v.* Downing (127 U. S., 607), the Supreme Court accepted as controlling the interpretation of the Treasury Department of section 14 of this very act extending over a period from 1874 to 1882, eight years, wherefore, and in sound conviction, this court feels bound to accept such an interpretation of another section of the act (sec. 21) extending over a period of almost 40 years.

The court is convinced after thorough research that the power to reliquidate by a collector for fraud after the one year has frequently been exercised, and, before the briefs were presented in the case of Sherman & Sons Co., never questioned.

For these reasons we are clearly of the opinion that at the time of these reliquidations the collector of customs was fully empowered to reliquidate the entries in question more than one year after in the presence of fraud.

This brings us to consideration of what fraud is necessary to initiate action under section 21 of the act of June 22, 1874 (18 Stat. L., 186). The statute makes the previous liquidation final only "in the *absence* of fraud." To be unable to say that fraud is *absent* from a case, the test of the application of the statute is far different from the requirement of a "finding" of fraud.

The court is of the opinion upon the statutes and authorities that the statute is satisfied with and should be applied by collectors, and it is their duty so to do whenever there is a well-founded "*suspicion*" of fraud in the case; that where there is such a *suspicion* of fraud it can not be said there is an "*absence* of fraud." Locke *v.* United States (7 Cranch, 11 U. S., 339, 348); Clifton *v.* United States (4 How., 45 U. S., 242).

The court in proceeding to interpret this section is not unmindful that it is an exceptional statute, the interpretation of which class of laws is governed by exceptional rules. The exceptional rule was thus epitomized by the Supreme Court in United States *v.* Stowell (133 U. S., 1, 12):

By the now settled doctrine of this court (notwithstanding the opposing dictum of Mr. Justice McLean in United States *v.* Sugar, 7 Pet., 453, 462, 463), statutes *to prevent frauds upon the revenue* are considered as enacted for the public good and *to suppress a public wrong*, and therefore, although they impose penalties or forfeitures, *not to be construed*, like penal laws generally, strictly *in favor of the defendant;* but they are to be fairly and reasonably *construed, so as to carry out the intention of the legislature.*   Taylor *v.* United States (3 How., 197, 210); Cliquot's Champagne (3 Wall., 114, 145); United States *v.* Hodson (10 Wall., 395, 406); Smythe *v.* Fiske (23 Wall., 374, 380).

What degree of fraud in an import revenue case demands and justifies action in court upon part of customs officers has for more than a century been declared by Congress and the Supreme Court. The Republic was young when its experience in preventing fraud against its import revenues demonstrated the necessity of the act of March 2, 1799 (1 Stat. L., 627, 678, ch. 22, sec. 71). It was provided in section 71 of that act, which related to seizures for fraud upon the import customs revenues, " and in actions, suits or informations to be brought, where any seizure shall be made pursuant to this act, if the property be claimed by any person, in every such case the *onus probandi* shall lie upon such claimant, * * * but the *onus probandi* shall lie on the claimant only where *probable cause* is shown for such prosecution, to be judged by the court before whom the prosecution is had."

The wisdom and justice of that rule was demonstrated by 75 years' experience, when in essentially the same words it was made section 909 of the Revised Statutes; and again over a quarter of a century later approved and reenacted by Congress as section 21 of the customs administrative law of June 10, 1890 (26 Stat. L., 131), in force when these entries were made; again so reenacted as subsection 20 of section 28 of the act of August 5, 1909 (36 Stat. L., 11), in effect when these reliquidations were made, and subsection T of section 3 of the act of October 3, 1913 (38 Stat. L., 114), in effect when this trial was had. Said provision reads:

SEC. 21. That in all suits or informations brought, where any seizure has been made pursuant to any act providing for or regulating the collection of duties on imports or tonnage, if the property is claimed by any person, the burden of proof shall lie upon such claimant: *Provided,* That probable cause is shown for such prosecution, to be judged of by the court.

The act of 1799, and particularly the import of the words "probable cause," as therein used, were interpreted by the Supreme Court, Chief Justice Marshall delivering the opinion for the court, in Locke *v.* United States (7 Cranch, 11 U. S., 339, 348), as follows:

These combined circumstances furnish, in the opinion of the court, *just cause to suspect* that the goods, wares, and merchandise against which the information in this case was filed have incurred the penalties of the law.

But the counsel for the claimant contends that this is not enough to justify the court in requiring exculpatory evidence from his client. Guilt, he says, must be proved *before the presumption of innocence can be removed.* The court does not so understand the act of Congress. The words of the seventy-first section of the collection law, which apply to the case, are these: "And in actions, suits, or informations to be brought, where any seizure shall be made purusant to this act, if the property be claimed by any person, in every such case, the *onus probandi* shall be upon such claimant." "But the *onus probandi* shall be on the claimant only where *probable cause* is shown for such prosecution, to be judged by the court before whom the prosecution is had."

It is contended that probable cause means prima facie evidence, or, in other words, such evidence as in the absence of exculpatory proof would justify condemnation. This argument has been very satisfactorily answered on the part of the United States

by the observation that *this would render the provision totally inoperative.* It may be added that the term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation; and in all cases of seizure has a fixed and real well-known meaning.  It imports a seizure made under *circumstances which warrant suspicion.*  In this, its legal sense, the court must understand the term to have been used by Congress.

Of the numerous cases applying this rule those precisely applicable may well be cited.  In Clifton *v.* United States (4 How., 45 U. S., 242)‧ the Government in establishing probable cause chiefly relied upon a 10 per cent difference between the invoice and appraised value of the goods, and the failure of the claimant to produce papers known to be in his possession which might explain suspicions excited by uncommon circumstances of the case.  The Supreme Court approved this instruction, holding that such made out such a prima facie case, and that the burden of proof rested upon the claimant. *The Luminary* (8 Wheat., 21 U. S. 407); Taylor *v.* United States (3 How., 44 U. S., 197, 211).  The court, however, is not driven to construction as to what constitutes that fraud which should move customs officers wherever made the basis of action.  Congress has declared such in an exactly parallel case.  "The provisions in one of several acts forming a general system may be explanatory of other parts of the same system."  *The Amelia* (1 Cranch., 5 U. S., 1, 35). By section 7 of the customs administrative act of 1890 it is—

*Provided,* That *if the appraised value* of any merchandise *shall exceed the value declared* in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure *the undervaluation,* as shown by the appraisal, *shall be presumptive evidence of fraud,* and *the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence.*

That principle was continued and approved by Congress in subsection 7 of the act of August 5, 1909, and subsection I of section 3 of the act of October 3, 1913.  If a "suspicion" of fraud constitutes "probable cause" sufficient to shift the burden of proof upon the importer in seizure and condemnation cases under sections 7 and 9 and 20–21 of the customs administrative law as is therein provided, wherein the judgment is *forfeiture* of the goods, why should not that measure of fraud be sufficient to prompt reliquidation where judgment at most is for the additional duties?  Congress and the Supreme Court having declared a difference in values sufficient evidence of fraud to warrant seizure and put the importer upon his proof, this court is of the opinion that a suspicious and persistent difference between the actual and invoice and between invoice and sale weights of a particular importer should be held equally sufficient

to move customs officials to appropriate action, which in these cases was to reliquidation of the entries.

Common sense and all human probabilities support the wisdom and fairness of these exceptional rules. Fraud never courts publicity. The proofs of its existence usually lie wholly and secretly with the *particeps criminis*. If, therefore, statutes "intended to prevent fraud" are to "be so construed as to carry out the intention of the legislature in passing them" to "*most effectually* accomplish these objects" the courts should not surround the performance of these duties by public officials charged therewith under the law with impracticable and ordinarily impossible performances. Such is the justification of the rules stated.

Having indicated the conclusion that a "suspicion" of evidence would justify and demand action upon the part of the collector further discussion of the rule and the particular evidence herein will be more appropriately had in the consideration of the weight of this evidence before the Board of General Appraisers, whose decision is more immediately under review.

Bearing in mind the law of the case as concluded let us examine the records before us. The court is of the opinion that much confusion has ensued from an inaccurate estimation of the exact import of the decision of the collector. Great stress has been laid upon the collector's "findings" of fraud and his "decision" as to fraud. *Let it be definitely understood at the outset that the collector herein neither made nor attempted to make either a "finding of fraud" nor a "decision" that there was fraud.* In this case, as in all such, the sole and only legal function of the collector is to decide as to the *rate* and *amount* of the accrued duties, and in this case the *only thing* decided or found by the collector on reliquidation was that the amount of the duties previously liquidated was erroneous, and that a different and greater declared amount of duties was due. That much was decided. That much the law empowered him to decide. Beyond that he neither *decided* nor found nor stated he decided or found anything further. All else herein is referable to the legal requirements imposed upon the collector by the customs regulations of the Treasury Department.

The law declares what shall be so transmitted and included in the record before the board. Subsection 14 of section 28 of the act of August 5, 1909 (36 Stat. L., 11), provides: "Upon such notice" (protest) "and payment the collector shall transmit the invoice and *all the papers* and exhibits connected therewith to the board of nine general appraisers for due assignment and determination * * *." Pertinent thereto are the regulations, articles 1073 and 1074, *supra*. Thereupon, the proceedings, *supra*, were had, eventually bringing all the parties to retrial before the board upon order of this court on

the importers' motion to grant an opportunity to offer evidence in rebuttal of the evidence in the record.

As the decision was made in 1912, he was governed by the Customs Regulations of 1908. These regulations in part provide:

ART. 1073. *Transmission to Board of General Appraisers.*—Unless the claim set forth in the protest is regarded by the collector, after reviewing his action with regard to the entry, as a valid one, he shall, within 30 days thereafter, transmit the protest, invoice, *and all the papers and exhibits connected* therewith to the Board of United States General Appraisers, at 641 Washington Street, New York. * * *

ART. 1074. *Same—Statement of reasons for classification.*—The collector, or officer acting as such, in his letter of transmittal shall state *the reason which governed him in the assessment of duty and shall forward any special reports received by him and any other information in his possession relevant to the matter.* * * *

Whether we consider the report of the special deputy or the collector all said in each is no more than a recital of the "reasons" actuating the reliquidation as to the amount of additional duties as required by the regulations. What is *decided* or "declared" as therein stated relates solely to the proper *amount* of duties upon protest *and payment of the additional duties*. In obedience to the law and regulations, the collector transmitted all the legally required papers to the Board of General Appraisers.

The material features (in suit 1464) shown by that record were:

(1) The decision of the collector as to the amount of duties properly due, estimated, and assessed upon the imported merchandise. This amount was determined to be $1,037.31 more than and additional to the amount previously assessed.

(2) The evidence negativing the absence of fraud which prompted reliquidation by the collector. This consisted in part of an amended weigher's return vacating the previous weigher's report and returning the stated true weights. The evidence further consisted of "invoices" and "accounts" including and in addition to the foregoing gathered by the collector and by him certified to the board under the powers conferred upon him by section 16 of the customs administrative law (26 Stat. L., 131), and articles 1073 and 1074 of the Customs Regulations of 1908, then in force. These "invoices" and "accounts" when compared show that "these amended returns and the reliquidation thereon relate only to garlic and chestnuts, while some of the entries, 14 in number, cover in addition other merchandise. Upon these corrected weigher's returns are written statements to the effect that the greater part of the reliquidated merchandise had been traced from the importers to various persons who had weighed the same and kept a record of such weights, with which the weights shown in the corrected returns substantially correspond; that in some instances the merchandise had been paid for upon the basis of such weights; and that in at least one case the importers had billed the goods at 46,253 pounds, which was some 3,500 pounds greater than the weight

thereof as originally returned by the weigher. We have examined some of the files relating to all these 14 entries, and therefrom it appears that the corrected returns increase the weights above those originally returned in amounts varying from 1,000 to 16,000 pounds in each of such entries."

In addition to the foregoing the record before the board contained the collector's reported "*reason* which governed him in the assessment of duty,"· to wit: That "evidence was produced to show that the returns of the United States weighers were false and fraudulent, hence * * * reliquidations made on the true weights," accompanied by the "special reports received by him" from the weigher to the same effect, all as required by article 1074 of the Customs Regulations of 1908 to be transmitted by the collector to the Board of General Appraisers.

(3) The protest among other things directed (1) "against the payment of the said increase of duty," (2) alleged "that the said reliquidations are inaccurate and are based upon unreliable figures and data, and that the reliquidations, as originally made upon the above-named entries" were final and conclusive, (3) "that the importers deny that there was any fraud connected therewith."

At the second hearing before the board upon the foregoing record, the case having been ordered for new trial on importers' motion to introduce evidence, the importers' counsel announced—

I had intended to go into the testimony and offer evidence and proof of the weights, etc. I have now decided not to do that and am simply going to make offers on the record, then make some objections on the record, and submit on that.

He then offered three indictments and records of acquittal in the case of United States *v. Joseph* Vitelli, this being a proceeding between the United States and *F.* Vitelli *& Son.* The board on objection of the Government excluded this evidence. Counsel for the importers then made the objections, as hereinbefore set out, principally in effect urging that the burden of proof was upon the Government to prove fraud; and that the weigher's returns upon which reliquidation was had were not made by the collector or any of his deputies. Both sides rested. The judgment was for the Government.

Was the board justified in excluding the certified copies of the indictments and records of acquittal offered as making a case of *res adjudicata?*

The first and elemental requirement of that doctrine is, "there must be identity, not only of the parties, in the two actions, but also as to the character, capacity or quality in which they are litigants." United States *v.* California & Oregon Land Co. (192 U. S., 355); Washington, Alexandria, & Georgetown Steam-Packet Co. *v.* Sickles *et al.* (24 How., 65 U. S., 333); Gaines *v.* Hennen (24 How., 65 U. S., 553); Reynolds *v.* Stockton (140 U. S., 254); Werlein *v.* New Orleans (177 U. S., 390).

There was no such mutuality of character or capacity. The protestants were *F. Vitelli & Son v.* United States. The records offered were in the case of United States *v. Joseph Vitelli.* Even were it competent, no proof of their identity was offered or suggested. Upon principle mutuality of causes of action may well be questioned where, as here, the Government in the criminal case was required to prove its case beyond a reasonable doubt, while in the civil proceeding it would prevail upon proof by a preponderance of the testimony.

Were these requirements present, however, that such a judgment was *res adjudicata* may well be doubted. Those acquittals at most no more than established the absence of fraud *on the part of the importers.* Whatever may be the powers of the collector in obviously exceptional cases of fraud, they are nowhere here limited to cases of fraud upon the part of the importers alone, and, for want of that limitation, extend to all cases of *the absence of fraud in the particular case* whether by the importers or others, whereby the Government is deprived of its just revenues. The statute is not one of criminal or punitive limitation but one upon the powers of the Government to collect revenues fraudulently withheld by whomsoever perpetrated. So it has uniformly been regarded by the courts. "There is no allegation that there was any fraud *in the case."* Beard *v.* Porter (124 U. S., 437, 442).

The fraud in question is that mentioned in section 21 of the act of June 22, 1874 (18 Stat. L., 186). The language there employed concludes the question. It is—

After the expiration of one year from the time of entry, *in the absence of* fraud and *in the absence of* protest *by the owner, importer, agent, or consignee.*

Repetition of the words "in the absence of " can only be justified and given effect by a congressional purpose to separate the two provisions and their respective modifications. The only useful purpose in that particular was to confine all the modifications (by the owner, importer, agent, or consignee) to the latter and withhold them from the former predication. The confinement of the protest to that of an "owner, importer, agent, or consignee," without so limiting "fraud" indicates a congressional purpose not to so limit "fraud." Stephens *v.* Cherokee Nation (174 U. S., 445). Section 9 of the customs administrative act declares forfeiture of goods for acts of the owner, consignee, and "other persons." The Supreme Court has held a weigher one of such persons. United States *v.* Mescall (215 U. S., 26). That in certain cases "good faith and innocence constitute no defense" and that "the absence of any fraudulent intent by the consignee, the owner, or the agent" in certain actions to recover additional duties was held and the authorities reviewed by the Circuit Court of Appeals for the Eighth Circuit in United States *v.* Bishop (125 Fed., 181).

The rule of decision in United States *v.* Stowell (133 U. S., 1, 12) that statutes aimed at the prevention of frauds against the revenues will not be construed strictly in favor of the defendants, but to carry out the intent of the legislature was obviously followed in the case of United States *v.* Mescall (215 U. S., 26), where the rule of *ejusdem generis* was rejected and the patent intent of Congress followed. The unquestionable intent of Congress by this section (21) was to enable the collector to recover the just revenues whenever and by whomsoever defrauded of them. The statute in language is not confined to frauds by weighers or exporters or any particular person. That language is expressly avoided by the context. If we are to follow the rule and construe the act so as to enable the Government to most effectually recover the revenues of which it is defrauded we must grant that relief regardless of who commits the fraud, for it is that construction which most effectually observes the congressional purpose. The indictments and records of acquittal were properly excluded by the board.

It is argued, however, that the weigher's original return is final and conclusive upon and can not be varied by the collector, wherefore these reliquidations are void.

Appellants rely upon Marriott *v.* Brunc *et al.* (9 How., 50 U. S., 619, 634) and Earnshaw *v.* Cadwalader (145 U. S., 247, 259) in support of this claim. Nevertheless, those cases perfectly harmonize with a long line of decisions of the Supreme Court typified by Belcher *et al. v.* Linn (24 How., 65 U. S., 508, 522), wherein it is held that even in cases of officers invested by law with the exercise of powers involving judgment and discretion, such as appraisers, "power in the officer and fraud in the party" is always open to challenge as effecting finality of their actions. Announcement of the principle seems but the statement of a trite legal maxim.

Intimately associated at this point of discussion are the suggested restraints to reliquidation offered by the previous liquidation, the appraisement, and the weigher's original return.

For reasons hereinafter indicated there is no question of the appraisement or its validity in this case, and the references and authorities so relating are used by way of illustrating the principle herein adopted. The power of the collector to reliquidate we have already considered. The theory of the manner of its effect upon the original liquidation in the presence of that power becomes of less importance.

Whether upon the principle that a liquidation induced by fraud is a nullity, absolutely void, and, therefore, that the reliquidation is such in name only, but not such in law or fact, being the only valid liquidation in the case; or, upon the principle that the reliquidation is an abandonment of the original, the legal right so to do finds ample and unchallenged support in the authorities.

Even in cases of appraisement, which are and ever were by statute declared final as against the Government as well as the importers, the Supreme Court in cases where an appraisement was induced by fraud, has affirmed the power of the collector to treat it as a nullity and order a new appraisement. In Iasigi *et al. v.* Collector (1 Wall., 68 U. S., 375, 383), the court said:

It is true, that the appraisal and ascertainment of the dutiable value of the goods are made final and conclusive both upon the importer and the Government. But the question still remains, *what* appraisement or ascertainment of the value is to be regarded as final? It is admitted, if the appraisal was infected with fraud or imposition, it could not be, and the collector would not only be justified, but it would be his duty to order reappraisement, even under the circumstances in which the present one was made.

The interests of the Government, as well as a proper regard for the rights of the honest importer, require it. And it seems to us but reasonable, if, from neglect or want of proper evidence or information on the part of the appraisers, the appraisal be under the proper dutiable value, this power of the collector should be permitted to correct the error. It is true, the exercise of it is usually, and doubtless with few exceptions, previous to the permit to deliver the goods; and must be so, generally, in order to be effective. But the act of Congress conferring the power on the collector fixes no limit to the period within which it may be exercised, and we think a reasonable discretion should be allowed him.

In Robertson *v.* Downing (127 U. S., 607, 613), affirming the power of the collector to reliquidate, the court observed:

The previous liquidation   *   *   *   was necessarily abandoned by the corrections subsequently made.

In Louisville Pillow Co. *v.* United States (144 Fed., 386), the Circuit Court of Appeals for the Sixth Circuit thus declared the legal status:

As we read the statutes, the reliquidation has all the validity of the original liquidation. *When made, it becomes the liquidation in lieu of the original, and must be treated as such under section 14.* As said in Robertson *v.* Downing (127 U. S., 607, 8 Sup. Ct., 1328, 32 L. Ed., 269), where the duties were first liquidated on May 5, 1882, and reliquidated on May 24, 1882, and the protest was not filed until two days after the reliquidation (p. 613 of 127 U. S. and p. 1331 of 8 Sup. Ct., 32 L. Ed., 269): "The duties were not finally liquidated until the 24th of May, 1882. The time to protest did not begin to run until then. The previous liquidation on the 5th of May was necessarily abandoned by the correction subsequently made." Followed in Sgobel & Day *v.* Robertson (C. C., 126 Fed., 577).

In the recent case of United States *v.* Whitridge (197 U. S., 135, 25 Sup. Ct., 406, 49 L. Ed., 696), in which was involved the rupee price of imported goods, the collector first liquidated, then reliquidated upon the protest of the importers, and again reliquidated under direction of the Secretary of the Treasury. After the second reliquidation the importers protested, and the matter was submitted to the Board of General Appraisers, whence it ultimately reached the Supreme Court.

To the same effect see United States *v.* McDowell (21 Fed., 562); United States *v.* Dickson (C. C. A., 139 Fed., 251); Sgobel & Day (126 Fed., 577); *In re* Strauss, Sachs & Co., G. A. 2743 (T. D. 15309); *In re* Hartmann & Darling, G. A. 3610 (T. D. 17436); *In re* Ford,

G. A. 3167 (T. D. 16338); *In re* Comey & Johnson, G. A. 3842 (T. D. 17967); *In re* Stone & Co., G. A. 5406 (T. D. 24623).

That by reason of the presence of fraud herein the collector was not bound either by the weigher's return or the previous liquidations seems amply supported upon principle and authority.

Regardless of the validity of the weigher's amended return as such there would seem to be no question of his power to declare void as he herein did the previous returns. Section 249, Revised Statutes, provides "the Secretary of the Treasury shall *direct* the superintendence of the collection of the duties on imports and tonnage, *as he shall judge best.*" Section 251, Revised Statutes, empowers him to make regulations having the force of law (cases *supra*). By article 1484 of the Customs Regulations of 1908 the weigher is empowered to amend his returns of weights. Whatever may be said of the manner of that amendment as otherwise required by the regulations, the power to amend implies a power to vacate the previous return, which was herein expressly done. That the collector has power so to treat an original liquidation we have already considered.

That the existence of fraud rendered both the weigher's return and original liquidation void is well settled upon principle.

In an opinion of much learning by Mr. Justice Story, sitting as Circuit Justice in Bottomley *v.* United States (1 Story, 135; 3 Fed. Cas., 968, No. 1, 688), where a permit of lading was obtained by false and fraudulent invoices and bribery of a deputy collector, it is concluded:

Here, no true entry, or honest estimate of duties, has ever been made; the duties justly due have never been paid, or secured to be paid. In each case, the transaction is equally a gross and palpable fraud; and the *more or less of aggravation in the circumstances can not change the legal result.* It makes no difference in the concoction of the fraud, in legal intendment, whether it defrauds the Government of the whole, or of the half, or of the quarter of the legitimate duties. It is still tainted and putrescent throughout. It is in known violation of law; and *no act, done in known violation of law, can be admitted to have any legal validity.* It would be a contradiction in terms. Upon the whole, I am entirely satisfied, upon full deliberation, that the permit in the present case, if obtained by fraud and collusion between the claimant and the deputy collector (as the jury have found it was), was utterly void, and a mere nullity, and never had any legal existence as a permit. The cases of Cutts *v.* United States (case No. 3, 522), United States *v.* Lyman (*Id.* 15647), and Johnson *v.* United States (*Id.* 7419), involved many considerations directly applicable to the present point; and I see no reason to be dissatisfied with those judgments.

In United States *v.* Nine Trunks (27 Fed. Cas., 161, No. 15885), the principle was laid down by Mr. Justice Strong, Circuit Justice, that an "illegal importation worked a forfeiture." On appeal to the Circuit Court the decision was affirmed. United States *v.* Nine Trunks (27 Fed. Cas., 164, No. 15886). To the same effect the *Sarah B. Harris* (21 Fed. Cas., 441, No. 12344).

Congress by section 9 of the customs administrative law (26 Stat. L., 131), in a paragraph speaking of "fraudulent *or false* invoices, entries and papers," has declared an importation so made an illegal importation. If the acts *in pari materia* are to be interpreted as therein provided, these importations were illegally introduced by "false" invoices and entries, and if such is deemed sufficient to warrant reliquidation in another instance, why not here?

Assuming that the collector has the power to reliquidate after the one year, and that a well-founded suspicion of fraud will support such action, as we have shown, this case is precisely within the principle of decision adopted by the Supreme Court in United States *v.* Tappan *et al.* (11 Wheat., 24 U. S., 420, 426), wherein the court said:

In explanation, however, of this answer, it is proper to observe that the eleventh section of the act, to which the questions are pointed, is intended to clothe the collector with enlarged powers to guard against fraudulent invoices. Whenever, in his opinion, there shall be just grounds to suspect that the invoice does not truly state the actual cost of the goods, he may direct an appraisement. How, or by what means, that opinion is made up, no one has authority to inquire, or a right to control. Ordinarily it will be founded from his own knowledge or the information he gets from others of the market price of the goods, and if that should differ widely from the invoice prices, it will afford grounds for suspecting the invoice to be fraudulent. For, as a general course of business, it is to be presumed that goods are purchased at the common market price. The authority of the collector to direct an appraisement is regulated, however, entirely by his own suspicion that the invoice is untrue, and does not state the actual cost of the goods as required by law. Whether this suspicion be well founded or not, it is not matter of inquiry. So far as respects the authority of the collector to direct the appraisement, he is governed altogether by his own opinion of the grounds of suspicion. Whether these suspicions were well or ill founded, and the consequences resulting therefrom, will depend upon after inquiry before the appraisers, and their decision thereupon. But the collector can not be called upon to avow or show the grounds upon which his suspicion rests. The law has vested him with an uncontrolled discretion on this subject to be regulated and governed by his own opinion, of the sufficiency of the grounds on which he suspects the invoice to be below the true value or actual cost of the goods.

While it is true that the weigher's return is presumably correct under the presumption attending official action, and can not be varied by the collector (Earnshaw *v.* Cadwalader, 145 U. S., 247, 259), except when the weigher has failed to follow the law *or in cases of fraud* (Belcher *v.* Linn, 24 How., 65 U. S., 508, 522), Congress has not expressly invested it with the finality of appraisement which, by section 13 of the customs administrative act, in the absence of protest, is made final and conclusive against all parties, including the collector. No such finality is given by Congress to weighers' returns. Revised Statutes United States, 2890. The fact that Congress deemed it necessary by sections 13 and 14 of the customs administrative act (26 Stat. L., 131) and section 21 of the act of June 22, 1874 (18 Stat. L., 186), to so expressly legislate as to finality of the appraiser's and

collector's acts, argues that it did not so intend to make *final* the weigher's report.

The most that can be said against these amended returns of the weigher is, that the time and manner of making such not having been pursued as prescribed by the Revised Statutᵤᵥ ᵥₑc. 2890) and Customs Regulations of 1908 (arts. 1036, 1440, and 1478–1512), they were *functus officio as such.* United States *v.* Leng (18 Fed., 15). We think the law otherwise. But the official weigher yet remained an officer of the customs and in making these special reports did so as such a public officer under the order and direction of the collector (art. 1440, *supra*) at the port of New York. Their evidentiary value as such "special reports" will later be discussed.

The likening the powers to those of appraisers in the briefs of appellants is unfortunate, for on the precise point the Supreme Court has held that they could base their judgment upon "computations *and reports*" made by witnesses. Origet *v.* Hedden (155 U. S., 228, 236).

That the collector is not left without power in such a status, and that the orderly collection of the vast import customs revenues of the country has not been made dependent by Congress upon the fidelity, integrity, and capacity of every subordinate official of the customs service, is here well exemplified. Congress has not been so impoverished of wisdom that after more than a century of experience and legislation in its customs revenue administration it has upon the first appearance of infidelity or inaccuracy of any subordinate ousted the collector of all power to collect the just dues.

Appellants thus voice their claim:

Each of the entries and reliquidations which are *transmitted to this court as part of the record* contains a statement reading as follows: "The correct weight as returned herein is ascertained as follows:" Then comes a statement that "Core & Herbert," or "Visconti," or "Bernard," or "Gastenheimer, of Nash & Kendall," or some other person, naming him, weighed a certain number of baskets at a certain weight. None of the persons so named are United States weighers, or authorized or employed to act as such. * * *

There is no doubt that if the United States weigher in this case had simply made his return of weights, without stating on the record how he arrived at them, it would be presumed that he acted according to law, in the absence of evidence to the contrary; but such presumption is overcome where *the return itself contains the evidence, showing that the weights were not ascertained in the manner prescribed by statute.*

It is significant that, commencing with the customs administrative act of 1890 (26 Stat. L., 131), section 13, long after the enactment of section 2890, Revised Statutes, *supra*, Congress immediately after legislating finality as to the appraiser's report, provided as to the remaining ascertainments necessary to liquidation, *"the collector or* the person acting as such shall *ascertain, fix,* and liquidate the rate *and amount* of the duties," etc. Certainly in case no weigher was

provided by law, or where he could not perform his duties because of the absence of the goods or for other cause, this power is broad enough to authorize the collector to ascertain the weight in any satisfactory manner.

This view is confirmed by section 16 of the customs administrative act (26 Stat. L., 131), giving collectors the power *unlimited in time* to cite the "owner, importer, agent, consignee, *or other person*," examine him under oath and "require the production of any letters, accounts, or invoices relating to said merchandise," "may require such testimony to be reduced to writing, and when so taken it shall be filed in the office of the collector and *preserved for use* or reference until the *final* decision *of the collector or said board of appraisers* * * * respecting the valuation *or classification* of said merchandise." In a decision of great merit by Judge Hand, Southern District of New York, it was held that the provision empowered the collector to "order an examination *in aid* of a possible reliquidation." United States *v.* Calhoun (184 Fed., 499, 506). That case was affirmed on appeal, United States *v.* Calhoun (C. C. A., 215 Fed., 709). Moreover, the statute makes and declares the testimony and accounts so taken by the collector legal evidence before the collector and the board, their weight to be determined, of course, by the reviewing tribunal. With this broad power granted the collector to examine, fix, and liquidate the amount of the duties, coupled with the absence of any provision making the weigher's return final, and the broad power of section 16 in the collector to examine and consider "accounts" of *all* persons, we entertain no doubt that at least in cases where the weigher did not follow the law or was guilty of fraud the collector could, as he did here, direct the weigher or proceed himself to "ascertain" from the "accounts" of merchants to whom the merchandise was sold its true weights, and accordingly liquidate.

Whether we consider this "evidence" of weights, spoken of by appellants, introduced in the record as an amended weigher's return, or as "accounts and invoices" taken by the collector under section 16 of the customs administrative act (26 Stat. L., 131), or as "special reports received by him and any other information in his possession relevant to the matter," transmitted to the board under article 1074, Customs Regulations of 1908, when before the collector it was evidence "in aid of reliquidation" and when so transmitted became a part of the record and evidence duly before the board.

There was no other proof offered, made, or taken before the board and the sole evidence in the case was that transmitted by the collector. Did the board err in its decision? We think not.

Viewing the record as supporting the collector's action, his reliquidation was within his legal powers (cases *supra*) and the court is of

the opinion that there was sufficient evidence before him to warrant and require such action. Whether the decision of the collector be deemed such an official act as is attended by a presumption of verity and regularity, or that of an inferior tribunal or administrative officer acting in a quasi-judicial capacity whose jurisdiction will not be presumed, the "fraud" required by the act being a jurisdictional requisite, due degree of which must be shown by the record, this record satisfied both requirements.

(1) That the decision of collectors of customs as to the rate or amount of duty are presumed correct and regular is well established and not open to serious question.

The Supreme Court in Arthur *v.* Unkart (96 U. S., 118, 121, 122) precisely adjudged this question, declaring:

> When an appeal is taken from his decision, the decision of the collector ceases to be conclusive; and the same is true of the decision of the Secretary of the Treasury. These officers are, however, selected by law for the express purpose of deciding these questions; they are appointed and required to pronounce a judgment in each case; and the conduct, management, and operation of the revenue system seem to require that their decisions should carry with them the presumption of correctness. This rule is not only wise and prudent, but is in accordance with the general principle of law that an officer acting in the discharge of his duty upon the subject over which jurisdiction is given to him is presumed to have acted rightly.

This court so held in United States *v.* Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194); United States *v.* Frank & Lambert (2 Ct. Cust. Appls., 239; T. D. 31973); Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217); United States *v.* Bradshaw & Co. (5 Ct. Cust. Appls., 121; T. D. 34168). See also to the same effect United States *v.* Arredondo (6 Pet., 691, 729); Earnshaw *v.* United States (146 U. S., 60, 67); Erhardt *v.* Schroeder (155 U. S., 124); Muser *v.* Magone (155 U. S., 240, 251).

Indeed, it seems well established that not only does this presumption attend the decision of the collector but, when it is essential to act, that a certain state of facts should exist, there is a presumption of the existence of such facts. United States *v.* Loeb *et al.* (99 Fed., 723, 732); United States *v.* Rosenwald *et al.* (C. C. A., 67 Fed., 323, 328); United States *v.* Schering *et al.* (C. C. A., 123 Fed., 65, 67).

Assuming, however, that the collector's decision is not so attended with this presumption, the applicable rule is concisely stated in Galpin *v.* Page (18 Wall., 85 U. S., 350):

> As to them there is no presumption of law in favor of their jurisdiction; that must affirmatively appear by sufficient *evidence* or proper averment in the record, or their judgments will be deemed void on their face.

Equally concise is Sabariego *v.* Maverick (124 U. S., 261):

> If we had before us an actual and formal decree of a competent tribunal adjudging him guilty of the offense and confiscating his property in punishment therefor, that

of itself would not be sufficient to establish its own validity. We should still require *record evidence* of the existence of those facts which brought him and his property within the jurisdiction of the tribunal pronouncing such a decree.

That the requirement is satisfied by *evidence* in the record of the requisite fact, be it jurisdictional or evidentiary, is well settled. United States *v.* Jonas (19 Wall., 86 U. S., 598); United States *v.* Ross (92 U. S., 281); United States *v.* Carr (132 U. S., 644).

*This record as presented to and acted upon by the collector contained such evidence in the fullness required by the statute.* By its least import it contains evidence of a persistent variance between the invoice and entered and the actual weights and between the former and the weights at which they were sold and settled for.

If this court observes the general principle declared by the Supreme Court in United States *v.* Stowell (133 U. S., 1, 12) that such statutes "shall be so construed as will most effectually prevent fraud" and the application of that rule by that court in Locke *v.* United States (7 Cranch, 11 U. S., 339), wherein a "suspicion" of fraud, and in Clifton *v.* United States (4 How., 45 U. S., 242), wherein a variance in values were held sufficient evidence of fraud to warrant action and put the importer upon his proofs in actions in the United States courts *to forfeit* the importer's goods (in which courts the general rule putting the burden of proof by a preponderance of the evidence upon the Government otherwise obtains), how can we refuse to hold a suspiciously persistent variance in weights of these importers' goods, coupled with the fact of their billing them on sale at much greater weights, sufficient evidence of fraud to warrant and require the collector to reassess the duties, whereupon, as we shall show, the importer, if the goods are in customs custody, receives notice and must pay the increased duties in order to protest and try his case before the board, with appeal to the courts. But if the goods are not in custody, upon receipt of the required notice he can either pay the increased duties, protest, and litigate as before, or refuse to pay and defend action in the United States District Court. Be it noticed in passing that if in the United States District Court a well-founded "suspicion" of fraud will, under the statutes, support action and shift the burden of disproving fraud to the importer, why would not that same "suspicion" of fraud warrant the therein reviewed action of the collector founding the action? Certainly no one will contend that less evidence is required to support the review of a decision uncontradicted than is necessary to support the decision itself! Wherefore, the court is of the opinion that the evidence before the collector was sufficient in due observance of his official duty to *require* action. What, may be asked, would any merchant do upon discovery that goods delivered to him were thus persistently materially underweighed as paid for? Would he be justified in suspecting fraud?

Upon protest and appeal to and the case being called by the board; all parties being present, determination of the issues proceeded. All evidence offered (the indictments and records of acquittal) were excluded, and the case submitted upon the record before the collector, as detailed. What then was the legal status of the case as submitted to the Board of General Appraisers?

(*a*) *The record showed a reliquidation by a collector of customs as to the amount of duties due upon imported merchandise.* The presumption of correctness attended that decision of the collector (cases *supra*). If any presumption of innocence aided the importers, that was neutralized by the former presumption and the parties stood before the board unaided by presumptions, the burden of proving the allegations of the protest resting upon the importers.

(*b*) *The record contained evidence that negatived the absence of fraud.* The evidence of persistent variances in and sales at greater weights, being evidence of fraud, destroyed any presumption of innocence attending the importers. As said by the Supreme Court in Galpin *v.* Page (18 Wall., 85 U. S., 350, 366):

Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point. and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred.

In the presence of evidence that there was fraud no presumption that there was not such and that the importers were innocent will be indulged. On the contrary, this evidence being undisputed by other evidence or explained by the importer it was sufficient to establish a *prima facie* case for the Government. Locke *v.* United States (7 Cranch, 11 U. S., 339); Clifton *v.* United States (4 How., 45 U. S., 242). Moreover, the importers being present, not only must we presume that they knew the true weights upon which they purchased and sold the goods, but having declared in their protest that the reliquidated weights were "inaccurate and are based upon unreliable figures," their failure to so prove in explanation of the persistent variances and sales shown by the record the board was bound to take into consideration against them. Locke *v.* United States (7 Cranch, 11 U. S., 339); Clifton *v.* United States (4 How., 45 U. S., 242), and cases *supra*. The evidence in the case, *irrespective of any presumptions*, put the burden of proof upon the importers, and having failed to explain the variances the board was bound to render judgment for the Government. Locke *v.* United States (7 Cranch, 11 U. S., 339); Wood *v.* United States (16 Pet., 41 U. S., 342); *The Luminary* (8 Wheat., 21 U. S., 407); Clifton *v.* United States (4 How., 45 U. S., 242).

The board had a right and no doubt did take into consideration that these importers had come to this court asking for a modification of a previous decision and for an order permitting them to offer proof below; that in their protest, eliminating the question of fraud, they alleged the reliquidating weights erroneous, that in the ordinary course of business they knew and could prove the true weights, thereby concluding the cause in their favor, yet they failed so to do. (Cases *supra*.)

The two matters appearing from the record as transmitted by the collector, (1) that a collector of customs had reliquidated an entry deciding the amount of duty due, and (2) the reliquidation being more than one year after entry; the existence in the record of evidence sufficient to establish probable cause (or well-founded suspicion in the mind of the collector) that fraud was not absent from the case, the Board of General Appraisers had jurisdiction to hear and determine the issues, both as to the amount of the duties and the existence of fraud in the case, and the evidence of fraud in the record was sufficient to shift the burden of proof upon the importers to explain or contradict that evidence.

This we regard the legal status of the case upon judgment by the board, whether or not, *in such a case*, the long and well established rule in customs and all cases here obtained that the burden of proof is upon the protestant to prove the material allegations of his protest, aptly stated by the Supreme Court in Arthur *v.* Unkart (96 U. S., 118, 122):

Both the sheriff and collector have power to act in the first instance upon the question in dispute, and he who insists that such action is in violation of law *must make the proof to show it.*

United States *v.* Arredondo (6 Pet., 31 U. S., 691, 729); Louisiana *v.* McAdoo (234 U. S., 627); Arnson *v.* Murphy (115 U. S., 579). And the rule has been held to apply to allegations or requirements of a complaint for fraud. Doll *v.* Evans (7 Fed. Cas., 855, No. 3969); Murray's Lessee *et al. v.* Hoboken Land and Improvement Co. (18 How., 59 U. S., 272); Public Clearing House *v.* Coyne (194 U. S., 497); Butterfield *v.* Stranahan (192 U. S., 470).

There is nothing conflicting with the conclusions herein in United States *v.* Federal Sugar Refining Co. (221 Fed., 1016). In that case the complaint counted upon the *finality of a finding* or decision of the collector that there was fraud in the case. The statute, as we have seen, nowhere makes such a *finding* final or conclusive. It follows that such, if made, could not become *res adjudicata* as to fraud. The whole view of Judge Coxe is in entire harmony with the views herein expressed. This is shown wherein he concludes:

If the allegations stated in paragraph ninth of the complaint were stated not as "findings and decisions," but as *facts*, the defendant, by denying them, would have its day in court and an opportunity to prove that there was no fraud.

It follows such a complaint would have been deemed good.

For the same reason what is *decided* in United States *v.* Sherman & Sons Co. (237 U. S., 146) in no way conflicts with what is here decided. In that case there were two complaints. One made no allegation of either facts or a finding claimed conclusive by the collector and one made the latter allegation. The court held, with Judge Coxe, that both complaints were bad, and that each should have alleged fraud *as a fact in the case.*

While those cases arose on demurrer to the sufficiency of complaints unattended by any presumptions of correctness this case arose on appeal from a decision not only so attended but wherein the judgment roll shows all the facts and evidence before the collector which have been held necessary to a good complaint before the courts.

Much has been said about possible arbitrary action of the collector, want of notice to the importers, and an opportunity to disprove the fraud supporting the reliquidation where the procedure of the customs administrative act is pursued. Courts should give little heed to arguments based upon the assumption of malfeasance upon the part of sworn public officers. If courts observe the familiar rules of construction such *speculation* will find no legal justification in presence of the presumption of regularity of performance of public duties by such officers.

So, reasoning that the customs administrative procedure affords no notice of reliquidation or opportunity to disprove fraud prompting such, shows a signal oversight of the law. Our customs administrative laws are in no respect vulnerable to such charges of *ipse dixit* action or the deprivation of property without notice or opportunity of defense. Congress, in the early history of the country, realized that such a system could better, probably only, be made complete in detail, effectiveness, and fairness by confiding to the experience of the Treasury Department the power to supplement these laws by detail regulations with the force of laws.

This power was granted by act of February 10, 1820 (3 Stat. L., 543), and as revised finally incorporated as section 251, Revised Statutes. These regulations, when not contrary to the statutes and reasonable, have the force of law. United States *v.* Eaton (144 U. S., 677); Gratiot *v.* United States (4 How., 45 U. S., 80); *Ex parte* Reed (100 U. S., 13); United States *v.* Symonds (120 U. S., 46). When there has been a long acquiescence in such a regulation its construction of a statute will not be disregarded without the most cogent, persuasive reason. Robertson *v.* Downing (127 U. S., 607); Brown *v.* United States (113 U. S., 568, 571); United States *v.* Philbrick (120 U. S., 52, 59).

Contrary to the claimed want of express notice and opportunity to defend given importers by collectors of customs of reliquidation such has been required by the customs regulations for the last quarter of a century. The Supreme Court, in Westray v. United States (18 Wall., 85 U. S., 322), held importers not entitled to such notice. By circular of May 10, 1867, the Treasury Department required collectors to give such notice by posting in the customhouse. That rule was made article 359 of the Customs Regulations of 1884. The Customs Regulations of 1892 (art. 888) and of 1899 (art. 1477) required "a daily record must also be kept by both the collector and the naval officer *of all additional duties* found upon liquidation, and notice thereof *promptly sent* to the parties in interest." The Customs Regulations of 1908 (art. 1037) extended the requirement to "all duties, *additional and regular.*"

That such notice was given in these cases, see record, page 6. The same appears from the opinions of the courts in United States v. Sherman & Sons Co. (237 U. S., 146, at p. 147), and in United States v. Federal Sugar Refining Co. (211 Fed., 1016, at p. 1017). The claim, therefore, that reliquidation by a collector more than one year after entry for fraud under the customs administrative procedure leaves the importer without opportunity to defend against or disprove fraud is without foundation   This record completely disproves that claim.

The principles herein expressed demonstrate the complete harmony between what is decided in the cases discussed. Some pertinent comment may prevent misconception.

It should be borne in mind that in these cases, upon notice of reliquidation, the importers paid the additional duties (record, p. 6) and protested, thereby bringing themselves within the jurisdiction of the Board of General Appraisers and this court, whereas in both the cases of Sherman & Sons Co. and the Federal Sugar Refining Co. upon such notice the importers refused to pay the additional duties assessed upon reliquidation. This fact alone determined the tribunal of future proceedings.

Another pertinent difference is that these reliquidations did not affect or change the appraisements made. The appraiser fixed the unit value of the goods, which the collector followed, the reliquidation being based upon the weights of the merchandise. Herein, then, the line of cases denying the power of the collector to reliquidate upon the ground of finality of the appraisement are not in point. Due observance of this important distinction will avoid confusion. Of such cases are Beard v. Porter (124 U. S., 437); United States v. Calhoun (184 Fed., 499; affirmed C. C. A., 215 Fed. Rep., 709); *In re* Blum Hardware Co., G. A. 7636 (T. D. 34917). The difference in the statutes declaring appraisements final—section 13, customs ad-

ministrative act of 1890, as amended 1909 (36 Stat. L., 11)—expressly concluding all interested "parties" from that of decision of the collector extending only to "persons" (sec. 14, *ibid.*) is well settled. The former includes the collector, the latter does not. United States *v.* Phelps *et al.* (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039); United States *v.* Leng (18 Fed., 15). Whether or not, however, an appraisement moved by fraud possesses such finality or is a nullity is not in this case and not decided. See, however, Isaigi *et al. v.* Collector (1 Wall., 68 U. S., 375, 383); Hilton *et al. v.* Merritt (110 U. S., 97, 106); Passavant *v.* United States (148 U. S., 214, 220); Beard *v.* Porter (124 U. S., 437, 442); Belcher *v.* Linn (24 How., 65 U. S., 508, 522).

Careful reading of Federal Sugar Refining Co., Sherman & Sons Co., and Vitelli & Son, decided by this court on the first appeal, shows no conflict in what was decided. On the contrary, the latter appeal in all its phases demonstrates the claimed injustice of such procedure without foundation. In the first two cases it was held that the collector could not make a *finding* or decision of fraud which under the statute would become *res adjudicata.* We so held in effect in Vitelli & Son, the sole point decided being that the presumption of correctness of the decision of the collector and the evidence of fraud in the record each was sufficient to put the burden of proof upon the importer. That holding necessarily denied the conclusiveness of any such finding.

It should be particularly noted that it was not a *finding* of *fraud* by the collector that this court held would become *res adjudicata* under section 21 of the act of June 22, 1874 (18 Stat. L., 186), but the decision of the collector *as to the rate and amount of duty.* The finding or existence of fraud necessary to move reliquidation after the one year was not held the subject of *res adjudicata,* but disputable. That is settled by the statute (sec. 14 of the customs administrative act, 26 Stat. L., 131), which makes "the decision of the collector as to the *rate and amount of duties,* * * * all dutiable *costs and charges,* and * * * all fees and exactions * * * final and conclusive," and not his findings or evidence. The very fact that the statute does not require the collector to make a finding or decision as to fraud argues the requirement of such to support action to be of less fraud than would support a finding or decision. The statute, however, does make the collector's decision as to the *amount* of duty final in the absence of protest. Unprotested this decision becomes *res adjudicata* in all proceedings and in all courts. The importer may, however, elect remedies. He may protest and contest, if within a year after entry the *amount* of duty, if after the year the existence of fraud. The importer may elect tribunals, pay his duties,

and protest as in this case, or refuse to pay his duties and defend in the District Court. If it duly appears on trial before either tribunal that there was an "absence of fraud" the decision as to the amount of duty is barred by section 21 of the act of June 22, 1874 (18 Stat. L., 186). If it appears that there was not "absence of fraud" the decision of the collector as to the amount of duty is not *res adjudicata.* That the decision of the collector as to the *amount* of duty duly made as distinguished from his findings becomes *res adjudicata* is not only clear from the words of the act, but has been repeatedly affirmed by the courts, and that uniform interpretation has been adopted by Congress by repeated reenactments of the statute. That has been the repeated ruling of the courts for more than 40 years, including the Supreme Court in Westray *v.* United States (18 Wall., 85 U. S., 322, 329); United States *v.* Cousinery (7 Ben., 251; 25 Fed. Cas., 677, No. 14878); Watt *v.* United States (15 Blatch., 29; 29 Fed. Cas., 441, No. 17292); United States *v.* Phelps *et al.* (17 Blatch., 312; 27 Fed. Cas., 521, No. 16039); United States *v.* Campbell (10 Fed., 816, 819); United States *v.* Cobb *et al.* (11 Fed., 76); Gandolfi *v.* United States (74 Fed., 549); United States *v.* Tiffany & Co. (151 Fed., 473); United States *v.* Mexican International R. Co. (151 Fed., 545). See also Arnson *et al. v.* Murphy (115 U. S., 579, 584). Of course, that finality of decision only applies where the goods were entered and appraised and decision duly made—at least prior to the act of October 3, 1913 (38 Stat. L., 114), subsection N of section 3, which extends that finality to decisions of the collector to all "duties chargeable upon imported merchandise." Nor does the doctrine conflict with the line of cases wherein suit is brought to collect duties upon goods smuggled or otherwise not entered so as to come within jurisdiction of the collector, such as in *In re* Chichester (48 Fed., 281); *In re* Floyd Bros. & Co., G. A. 6468 (T. D. 27680). There is always open in such cases the right of the collector to seize the goods to await decision of the courts in proceedings to libel the goods, or in an action *in personam* against the importer unattended by any existing decision of the collector *res adjudicata.* The finality, therefore, of the collector's decision is neither anomalous nor in conflict with the adjudicated cases. These respective jurisdictions are supplemental one with the other.

The collector, barring exceptional minor instances, such as unclaimed goods (Revised Statutes, 2965), or seized goods valued at less than $500 (Revised Statutes, 3077), or perishable articles (Revised Statutes, 3080), has no power of executing his decisions. Enforcement thereof rests in his power to prevent landing and delivery until duties are paid or secured (Revised Statutes, 2869), at least prior to the act of October 3, 1913 (30 Stat. L., 114). When entered and

the estimated duties paid or secured, jurisdiction of the collector attaches and the procedure prescribed by the customs administrative act becomes exclusive, final, and conclusive as to the "rate and amount" of duties, all "dutiable costs and charges," and all "fees and exactions." Nichols *v.* United States (7 Wall., 74 U. S., 122, 129, 131); Andreae *v.* Redfield (98 U. S., 225); Arnson *et al. v.* Murphy (109 U. S., 238); Porter *v.* Beard (124 U. S., 429); Schoenfeld *v.* Hendricks (152 U. S., 691).

If, however, the importer refused to enter his goods (duties having accrued when the ship passed into the customs district); or if they were smuggled; or if he had given bond for payment of duties and it was necessary to enforce the bond; or if they were seized by the collector under sections 13 and 14 of the act of June 22, 1874 (18 Stat. L., 186), or other laws; in all such cases or in cases of reliquidation where the importer does not pay the additional duties decree of a competent court is necessary to *collect* the duties. If there had been a valid decision of the collector as to the rate or amount of duties, that in all such cases, and nothing more, is made *res adjudicata.* Beyond that in such cases all done or assumed by the collector in making his decision is open to contest, subject to the duly attending presumptions. In view of these distinct and defined powers and duties of the respective tribunals, the court upon careful comparison of the records and decisions finds no conflict in what was decided in the Federal Sugar Refining Co. case, in Sherman & Sons Co., and the previous and this Vitelli & Son decision by this court. In that and the view that the evidence in the record was sufficient to put the importers herein upon their proofs, the decision of the Board of General Appraisers should be affirmed.

In any event, were this court to regard the decision of the Supreme Court in United States *v.* Sherman & Sons Co., *supra,* as applicable to this case, these appellants having by protest to the Board of General Appraisers invoked relief in a tribunal without jurisdiction are without remedy.

*Affirmed.*