(C. D. 975)

EURASIA IMPORT CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 4, 1946)

*James W. Bevans* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: Plaintiff in these 12 cases, which have been consolidated, has filed protests against the refusal of the collector of customs to refund to said plaintiff amounts paid by it in excess of the amounts due as customs duties upon importations of wool-felt hat bodies. The importer of record, by whom the warehouse entries were made at various times during the year 1936, was the Aargol Import Corp. The plaintiff herein, the Eurasia Import Co., Inc., was the purchaser of the merchandise while the same was in warehouse. The evidence discloses that the original importer, the Aargol Import Corp., was unable to pay certain drafts held by the Chase National Bank, and that the foreign seller authorized said Chase National Bank to accept payment from Eurasia Import Co., Inc., for the merchandise. Thereafter, said Eurasia Import Co., Inc., withdrew for consumption 164 bales, the balance of the goods, the last withdrawal being made on September 13, 1937. It further appears that prior to the time the merchandise was purchased by the Eurasia Import Co., Inc., the original importer, the Aargol Import Corp., had withdrawn for consumption 75 bales and paid estimated duties thereon. These withdrawals took place during the period from June 15 to November 15, 1936. In each instance of withdrawals estimated duties were paid. As to the Aargol transactions, it further appears that that corporation paid additional amounts of $100 on entry 36152, covered by protest 54923-K, and $81.60 on entry 38114, covered by protest 54928-K, which amounts represented certain unpaid duties at the time of the last withdrawal.

All of the goods were withdrawn from warehouse for consumption prior to September 14, 1937, the last withdrawal having taken place on September 13, 1937.

None of the entries covered by the protests before us was liquidated

until 1940, when the collector in September and October of that year liquidated, following a decision of the Court of Customs and Patent Appeals reported in *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335. That decision held the merchandise to be dutiable at a less rate than that used as the basis for the payment of estimated duties. Therefore, it was necessary for the Government to refund these excess duties.

At the time of original entry for warehouse, the Aargol Import Corp. had filed single entry bonds to insure payment of all dutiable charges found legally due upon the merchandise subsequent to withdrawal, unless, according to the terms thereof "such duties, taxes, and charges shall have been duly paid by the person to whom the right to withdraw such articles may have been transferred, or by some other person * * * ."

No bond was required on the part of the Eurasia Import Co., Inc., to whom ownership of a portion of the goods was transferred while still in warehouse. Apparently this was due to the fact that prior to the passage of the Customs Administrative Act of 1938, there was no requirement either in the statute or customs regulations for the filing of transferees' bonds.

Despite the fact that the Eurasia Import Co., Inc., had paid the duties upon the 164 bales withdrawn by it, the collector of customs paid the full amount of the refunds covering the entire amount of 239 bales to the Aargol Import Corp. This was upon the theory that said Aargol Import Corp. was the importer of record under the statute and regulations in effect at the time of the last withdrawal.

The provisions of the Tariff Act of 1930, in regard to ownership at that time in effect, read as follows:

**SEC. 483. CONSIGNEE AS OWNER OF MERCHANDISE.**

For the purpose of this title—

(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; * * *

**SEC. 520. REFUNDS BY SECRETARY OF TREASURY.**

(a) AUTHORIZED.—The Secretary of the Treasury is hereby authorized to refund duties and correct errors in liquidation of entries in the following cases:

(1) EXCESS DEPOSIT.—Whenever it is ascertained on final liquidation or reliquidation of an entry that more money has been deposited or paid than was required by law to be so deposited or paid; * * *

The Customs Regulations of 1937, in force at the time of final withdrawal of this merchandise, insofar as pertinent, provided:

**Art. 1201. Refund of excessive duties, etc.—**

*       *       *       *       *       *       *

(c) Refunds of such excessive duties shall be made by check drawn to the order of the importer of record, that is, the person in whose name the entry was made, or to the order of the actual owner when substituted for the importer of record in accordance with section 485 (d) of the tariff act [relating to filing of owner's

declaration]. The person in whose name a rewarehouse entry is made may, for the purpose of making refunds, be considered the importer of record of the merchandise covered by the rewarehouse entry, provided he has filed a rewarehouse bond and the principal in the original warehouse entry bond does not, in advance of payment of the refund, file a written notice of an adverse claim. (See T. D. 45614.) The check covering the amount due, accompanied by the original notice of refund, shall be delivered or mailed together to the person entitled to receive the same, * * *

Plaintiff herein had not filed a rewarehouse bond, but did file a bond transferring ownership of a portion of this merchandise to said plaintiff.

It is contended by the plaintiff that, as transferee of this merchandise, refunds of that portion of the duties paid by it should have been made to said plaintiff, the Eurasia Import Co., Inc. This claim is based upon the provisions of section 22 (b) of the Customs Administrative Act of 1938, in effect at the time of liquidation but not at the time of the withdrawals of the merchandise. Said section 22 (b) amended section 557 of the Tariff Act of 1930 and provides:

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 562 and 563 of this Act which would otherwise be possessed by the transferor. The transferee shall also have the right to receive all lawful refunds of moneys paid by him to the United States with respect to the merchandise and no revocation of any transfer shall deprive him of this right. Any such transfer may be made irrevocable by the filing of a bond of the transferee in such amount and with such conditions as the Secretary of the Treasury shall prescribe, including an obligation to pay all unpaid regular, increased, and additional duties, charges, and exactions on the merchandise the subject of the transfer. Upon the filing of such bond the transferor shall be relieved from liability for the payment of duties, charges, and exactions on the merchandise the subject of the transfer, but shall remain bound by all other unsatisfied conditions of his bond. /

(b) On and after the effective date of this Act, this section shall be effective with respect to merchandise entered for warehouse prior to, as well as after, such date.

It will be seen from the above recital that the issues involved herein are the same as those passed upon by the United States Court of Customs and Patent Appeals in *Eurasia Import Co., Inc.* v. *United States*, 31 C. C. P. A. (Customs) 202, C. A. D. 273. The protests are the same as those involved in the decided case; the parties, the facts, and the law involved are the same. The collector's reply to the protests here involved is identical with his reply to the protest in the decided case, as is also the letter on which he bases his refusal to make refunds to the plaintiff herein.

The court in the cited case held that from every equitable standpoint the Eurasia Import Co., Inc., was entitled to receive in some manner

the excessive duties which it had paid as a part of the estimated duties when the withdrawals from warehouse were made by it. It therefore held that section 514 of the Tariff Act of 1930 should be construed broadly so as to confer jurisdiction on this court and the Court of Customs and Patent Appeals in a case of this character. In this connection the court stated that it seemed to it that "a refusal to make refund of excessive duties is a negative decision, order, or finding which amounts to an exaction quite as much as a refusal to pay a claim for drawback." The court further held that the collector or the Customs Bureau erroneously construed the statute in deciding that refund of the excessive duties should be made to the importer of record and in refusing to make refund to the transferee of that portion of the warehoused goods, upon which said transferee had paid the duties, and also that section 22 (b), *supra*, by its very terms, became retroactive from its effective date as to the right to receive any refund of excessive duties resulting from a reliquidation based upon reclassification.

At the hearing in the instant case the plaintiff contended that the issues, the facts, and also the parties litigant were the same in the instant case as in the cited case, and that the decision of the appellate court is controlling.

The Government at the hearing contended that this court has no jurisdiction to entertain these cases, and on the theory that all the facts were not before the court in the earlier case, Government counsel produced a number of witnesses in order to clarify the facts.

The grounds of the motion to dismiss are (1) that section 514 of the tariff act does not grant this court jurisdiction to entertain a suit in accounting to determine as between parties who is entitled to refunds; (2) that plaintiff herein did not acquire any right to file the instant protests; (3) that the protests are not sufficiently specific in that they do not set forth the amounts of the portions of refunds to which plaintiff contends it is entitled; and (4) that except as to one protest, there has been no "decision" of the collector against which protest could be filed within 60 days, as provided in section 514 of the tariff act.

The motion to dismiss was denied from the bench. This action was taken in conformity with the holding of the Court of Customs and Patent Appeals in the former case on the question of the jurisdiction of this court. We quote the court's language as found on pages 211 and 212 as follows:

There is, of course, no express provision authorizing a protest against the collector's refusal to refund excessive duties collected as a part of the estimated duties before liquidation, such as is expressly provided, for example, in the case of the collector's refusal "to pay any claim for drawback." That it is the duty of the collector to make such refunds, however, is so well understood that no

citation of statutory provisions concerning it and judicial decisions based thereon is necessary.

A refusal by the collector to pay a claim for drawback, or a refusal to reliquidate under the terms of the statute, an entry for clerical error, certainly constitutes a decision which although negative in character has all the effects of ar exaction, and is subject to protest. It seems to us that a refusal to make refund of excessive duties is a negative decision, order, or finding which amounts to an exaction quite as much as a refusal to pay a claim for drawback, and we see no reason why section 514, *supra*, should be so narrowly construed with respect to the jurisdiction of the courts clothed with authority in customs matters as to deprive them of jurisdiction of a protest against such refund.

In view of this broad construction placed upon section 514, *supra*, by our court of appeals, we were constrained to deny the motion to dismiss on the ground of lack of jurisdiction. That language is also sufficient to cover the question of the right of the plaintiff herein to file protest. The third ground for the motion to dismiss, i. e., that the protests do not set forth the amounts of the portions of the refunds to which plaintiff contends it is entitled, is likewise denied for the reason that the official records show the amounts of duties and charges paid by the plaintiff, and that such amounts are sufficiently described in the protests as excess amounts assessed and collected from the plaintiff. As to the fourth ground, the collector's reply to the protest in each case indicates that he understood the protest to be directed against his letter informing plaintiff of the ruling of the Bureau of Customs as to the proper party to receive refunds, which we construe as a refusal.

The testimony of the witnesses produced on the part of the Government clarifies the facts as to entry, transfer, withdrawals, and refunds, which were somewhat in doubt in the case originally tried on this issue, and for that reason is of interest in the present proceedings in order that we may have an exact picture of the conditions surrounding these transactions. However, we consider it unnecessary to discuss the testimony of the various witnesses, inasmuch as the issue is one entirely of law and the facts testified to by the witnesses disclose that the issue is on all fours with that in the case of *Eurasia Import Co., Inc.* v. *United States, supra.*

On the issue of law involved, the Government has advanced arguments not presented before this court or the Court of Customs and Patent Appeals in the former case.

It is contended by Government counsel in the brief filed that the saving clause of the Tariff Act of 1930 is still in force and effect and must be considered in connection with the amendments to that act, as found in the Customs Administrative Act of 1938, *supra.*

Said saving clause is found in section 651 and so far as pertinent, is as follows:

## SEC. 651. REPEALS.

\* \* \* \* \* \* \*

(c) RIGHTS AND LIABILITIES UNDER ACTS REPEALED OR MODIFIED.—The repeal of existing laws or modifications or reenactments thereof embraced in this Act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced. in any civil or criminal case prior to such repeal, modifications, or reenactments, but all liabilities under such laws shall continue and may be enforced in the same manner as if such repeal, modifications, or reenactments had not been made.

\* \* \* \* \* \* \*

In this connection the Government argues that as construed by the Court of Customs and Patent Appeals in the earlier case, the retroactive provision of section 22 (b), *supra*, reaches back to transfers executed prior to the creation of the new right to transfer and also to merchandise that had been not only "entered for" but also withdrawn from warehouse for consumption and released from customs custody prior to the enactment thereof. Further, it is contended that as so construed the amendment in effect repealed or modified the existing laws governing the rights and liabilities of importers of record as provided in sections 483, 520, and 558 of the Tariff Act of 1930, and article 1201 (*c*) of the Customs Regulations of 1937, *supra*.

This contention is answered by the holding of the court of appeals in which it stated, in regard to the rule that the original importer had a vested right to refunds, as follows:

The rule announced in the cited cases is well recognized, at least by this court, but it has no applicability to the facts of the instant case. The Government received nothing from the original importer and owed it nothing. It is not conceivable that, under the facts here appearing, it could as a constitutional right have sustained an action based upon article 1201 (*c*) of the regulations to recover something for nothing.

Under this holding so far as the original importer is concerned, inasmuch as it had not paid out any money to the Government as duties on this merchandise, no vested right to a refund of any overpayment existed. This seems to have been recognized by the customs officials as shown by a reading of the warehouse entry bond of the original importer (collective exhibit 4). It is therein provided that if the "duties, taxes, and charges shall have been duly paid by the person to whom the right to withdraw such articles may have been transferred" the obligation of the bond shall be void. Therefore, it would seem that the original importer's liability in this case, insofar as the payment of duties is concerned, would have been wiped out inasmuch as the record discloses that said duties were paid by the transferee, the plaintiff herein, upon the merchandise withdrawn by it. However, no question under the bond is before us. We may, in passing, call attention to the fact that prior to June 1935 this form of bond (customs Form 7555) did not contain the above provision.

It is further contended by ┃overnment counsel in the able brief filed that as the instant m┃ handise was entered and withdrawn from warehouse and had ent┃ ┃d the commerce of the country prior to the effective date of the Cu┃ ┃ms Administrative Act, the provisions of that act are not applicable ┃ere. That argument was presented to the Court of Customs and Patent Appeals in the earlier case and the court there held that the transaction was not completed until the collector made liquidation and that the Customs Administrative Act became retroactive from its effective date both as to the right to protest classification after liquidation subsequent to that date and as to the right to receive any refund of excessive duties resulting from a liquidation based upon reclassification.

While we are inclined to agree with the Government's position that the decision of our appellate court in the *Eurasia Import Co., Inc.,* case, *supra,* appears to be a departure from its earlier holdings in the cases of *Woolworth* v. *United States,* 13 Ct. Cust. Appls. 176, T. D. 41037; *Vitelli & Son* v. *United States,* 7 Ct. Cust. Appls. 243, T. D. 36544; *James Akeroyd & Son* v. *United States,* 19 C. C. P. A. (Customs) 249, T. D. 45341; *United States* v. *Brown & Roese,* 6 Ct. Cust. Appls. 382, T. D. 35922; *May Co.* v. *United States,* 12 Ct. Cust. Appls. 266, T. D. 40270; and *The Mengel Co.* v. *United States,* 20 C. C. P. A. (Customs) 399, T. D. 46232, in which the saving clause of earlier acts was construed, nevertheless, we assume that the court considered all phases of this case, even though not called to its attention by counsel. As stated above, the court held that the equities of the case were on the side of the Eurasia Import Co., Inc., and after due deliberation it was able to decide upon a construction of the statute which would grant relief to this litigant. We are bound by that construction and holding and, in conformity therewith, sustain the instant protests and hold that the collector should have refunded to the Eurasia Import Co., Inc., as transferee the excess duties which had been paid by it.

Judgment will be rendered accordingly.